97　527
98　514

97　527
99　464
99　466
99　467

97　527
100　598

97　527
110　503

# Richmond.

## Virginia Coal Company v. Thomas.

### November 16, 1899.

1. Appeal and Error—*Conflicting Evidence—Doubtful Case.*—This court will not reverse the decision of a trial court on a question of fact in a doubtful case. The party complaining must show error in the judgment or decree complained of. If the charges of a bill are denied by the answer, and the evidence is conflicting as to an issue of fact on which the controversy depends, a decree of the trial court in favor of the defendant will not be disturbed.

2. Tax Titles—*Delinquent Lands—Sections 666 and 661 of Code—Failure to Adjourn Sale—Case in Judgment.*—A purchaser of delinquent lands from the Commonwealth who has complied with all the provisions of section 666 of the Code, as amended, and has obtained his deed and had it recorded, is entitled to the benefit of section 661 of the Code, which shuts off all defences against such purchaser, except that the taxes and levies for which the land was sold were not properly chargeable thereon, or that those so chargeable have been paid. In the case in judgment the treasurer's report of the sale, which was duly confirmed, showed that the sale was advertised as required by law for the first day of the December term of the court, and thereafter continued from day to day and term to term till the April term of the court following, when it was sold, and bid in by the Auditor for the State. If, in fact, there was no adjournment of the sale from the January term to the February term—the subsequent adjournments being regular, and no injury done—the title of the purchaser is not thereby affected.

3. Constitutional Law—*Excluding Objections to Tax Titles—Due Process of Law—Section 661 of Code.*—Laws enacted to give confidence to purchasers in the sufficiency of tax titles, and thereby to promote the most efficient means of collecting delinquent taxes, but which give to a land owner the absolute right of redemption for two years after his land has been sold for taxes, cannot be said to be in contravention of the Fourteenth Amendment of the Con-

stitution of the United States, which provides "that no man shall be deprived of his property without due process of law," because they cut off all defences except that the taxes were not chargeable, or had been paid. Section 661 of the Code is a valid exercise of the legislative power.

Appeal from a decree of the Circuit Court of Wise county, pronounced December 10, 1897, in a suit in chancery wherein the appellant was the complainant, and the appellee was the defendant.

*Affirmed.*

The facts sufficiently appear in the opinion of the court, but the proceedings by which Thomas acquired title from the State do not. He filed with the clerk of the County Court of Wise county the following application:

" To the Clerk of the County Court for Wise County, Virginia:

" I, the undersigned, John D. Thomas, hereby file with you this, my application, as provided by statute, to purchase one tract of land containing four hundred and forty-four acres, more or less, situate in said county, on Little Tom's creek, being the same land sold by the treasurer of said county on the 23d day of April, 1895, for delinquent taxes due thereon by and in the name of Hamilton Greear, and bought at said sale by the Auditor of Public Accounts of Virginia, for said State and county; and I hereby agree to pay the amount for which said real estate was so sold as aforesaid, together with such additional sums as may or would have accrued from taxes and levies, with all interest, as provided by law, had said real estate not been so sold and purchased by the Commonwealth.

" Given under my hand this the 24th day of April, 1897.

" JOHN D. THOMAS."

A copy of this application was placed in the hands of the sheriff of Wise county to be executed on Hamilton Greear, but

the sheriff returned it endorsed " Returned not executed, as the within named Hamilton Greear does not reside in my said county, and was not found in my said county." An order of publication was then made, but no copy of it is printed in the record. The certificate of publication is as follows:

" I, C. A. Honaker, editor and publisher of the ' Wise County Republican,' a weekly newspaper published in the town of Norton, Wise county, Virginia, do hereby certify that the annexed order of publication was duly published in the said newspaper for four successive weeks, commencing on the 30th day of April, 1897, and ending on the 21st day of May, 1897.

" C. A. HONAKER,

" *Editor ' Wise County Republican.' "*

Thomas then had the land surveyed by the county surveyor, who returned the following report to the County Court of Wise county:

" I, the undersigned, F. C. Habern, county surveyor of said county, in pursuance of section 666 of the Code of Virginia, for the year 1887, as amended and re-enacted by an act approved January 29, 1896, on pages 219-20, of the Acts of the General Assembly, for the years 1895 and 1896, would most respectfully report that the following are the metes and bounds of a certain tract or parcel of land, which John D. Thomas proposes to buy from the Commonwealth of Virginia, as the same was sold on the 23d day of April, 1895, by the treasurer of the said county, for delinquent taxes due thereon, for the year 1890, by and in the name of Hamilton Greear, and was bought at said sale by the Auditor of Virginia.

" Said tract or parcel of land is situated in the said county of Wise, and State of Virginia, on both sides of Little Tom's creek, and bounded and described as follows, to-wit:

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

" Said tract or parcel of land adjoins the lands of Jesse Gibson, Hiram Kilgore, I. E. Thomas, Robert Jordan, J. O. Kennedy, and William Greear's estate."

Upon the coming in of this report the following order was made by said County Court:

" John D. Thomas, applicant,

v.

" Hamilton Greear, defendant.

"Application to purchase real estate sold for delinquent taxes, and purchased by the Commonwealth.

" This application filed by John D. Thomas in the clerk's office of this court, on the 29th day of April, 1897, for the purchase of a certain tract or parcel of land, containing four hundred and fifty acres (being assessed as 444 acres), which said tract or parcel of land is situated in the county of Wise, Virginia, on both sides of Little Tom's creek, which said real estate was all sold on the 23d day of April, 1895, by the treasurer of said county, for delinquent taxes due thereon, for the year 1890, by and in the name of Hamilton Greear, and bought at said sale by the Auditor of Public Accounts of Virginia for said State and county, came on to be heard upon the application, and a copy of the said application which was returned by the sheriff of the said county on the 29th day of April, 1897, with his return thereon endorsed that he had not executed the said copy of the said application on the said Hamilton Greear, he not being a resident of the said county, and that the same could not be served on him by the said sheriff, and upon a copy of the said application published for four successive weeks in the ' Wise County Republican,' a weekly newspaper published in the town of Norton, in the said county of Wise, commencing on the 30th day of April, 1897, and ending the 21st day of May, 1897, and the certificate

attached to the said order of publication of the editor of the said 'Wise County Republican,' and upon the report of Frank C. Habern, county surveyor of said county of Wise, filed the 26th day of July, 1897. And on consideration whereof, the court, finding no objections to the said report of Frank C. Habern, county surveyor as aforesaid, the court doth approve and confirm the said report, and doth order that the said report of Frank C. Habern, county surveyor as aforesaid, be recorded by the clerk of this court in the deed books of this court, together with a certified copy of this order; and the court doth further order that after the said report of Frank C. Habern, county surveyor as aforesaid, and the certified copy of this order shall have been recorded as aforesaid, by the clerk of this court, then the said clerk of this court shall convey the said real estate to the said John D. Thomas, by deed as provided by section 666 of the Code of this State, for 1887, as amended and re-enacted by the General Assembly of this State, by an act approved the 29th day of January, 1896, on pages 219 and 220 of the Acts of the General Assembly of this State for 1895-'6, as it appears from a receipt from the clerk of this court, filed with this application, that the said John D. Thomas has paid to the said clerk all the taxes, interest, costs, and fees as required by law to be paid by the said applicant, and this motion is ordered to be stricken from the docket."

In pursuance of this order the clerk conveyed the land to Thomas, and Thomas had his deed recorded in the clerk's office of the County Court of Wise county. The complainant, who was in possession of the land as owner, claiming under a regular chain of title, instituted this suit against Thomas for the purpose of removing the cloud cast upon his title by the foregoing deed to Thomas. The Circuit Court, at the hearing on the merits, dismissed the bill, and the complainant applied for and obtained this appeal.

*R. T. Irvine,* for the appellant.

*Samuel A. Anderson, H. W. Sutherland,* and *Roland E. Chase,* for the appellee.

KEITH, P., delivered the opinion of the court.

The Virginia Coal Company is in possession of and claims title to a tract of land in Wise county which was formerly the property of Hamilton Greear. Greear was in arrears to the State for taxes for the year 1890 upon this tract, which had been duly assessed, the tax duly levied and returned delinquent. It was advertised for sale at the December term of the County Court of Wise county, 1894, and was bought by the Commonwealth at the April term, 1895, of said court. In April, 1897, John D. Thomas made application to become the purchaser of it from the Commonwealth, and, having fully complied with the law upon the subject, a deed was made to him on August 13, 1897, by the clerk of the County Court, which was duly acknowledged and recorded on the same day. The Coal and Iron Company filed its bill attacking this deed, and praying that it may be cancelled and annulled, as constituting a cloud upon its title.

After carefully scrutinizing the record, we are of opinion that there is but one of the many objections urged to this deed of sufficient importance to require consideration.

It is fully established that the property in question was listed and assessed for taxes; that the taxes were levied according to law; that it was sold for taxes as stated in the deed; that the grantee named therein was a purchaser; that it was advertised for sale in the manner required by law; and that it was actually sold.

It appears that the land in dispute, and a number of other tracts, were advertised to be sold at the December term, 1894, of the County Court of Wise county. This tract was not sold upon that day. The report of the treasurer of Wise county, dated December 25, 1895, recites that, after giving the notice required

by law on the first day of the December term of the County
Court, which was the 27th day of the month, and continuing
the sale from day to day and from term to term, on the 23d day
of April, 1895, this tract was bid in by the Auditor of Public
Accounts for State taxes for the year 1890, and this report was
confirmed by the County Court on the first day of February,
1896. The application made by Thomas, and all the subsequent
proceedings up to and including the deed from the clerk to him,
comply strictly with the provisions of the statute.

It is alleged in the bill, among other things, that the sales were
not adjourned from time to time and from term to term, as
stated in the treasurer's report, but that in fact, at the January
term of the court for the year 1895, the treasurer was not present
either in person or by any agent, but was at home, and that no
sale was made nor adjournment of sale announced at that term,
and that, as a consequence of this omission, the sale subsequently
made at the April term was without notice, and a nullity. The
answer denies this averment of the bill, and the testimony of
several witnesses is taken upon the issue thus made.

Maxwell, the treasurer, says: " I do not recollect whether or
not I failed to attend every term of the County Court while
said delinquent sales were pending. It seems to me that at one
term there was no court, and that I came and adjourned the
sales, but did not sell any. I have been sick, periodically, about
once a year for several years, and I missed one term of the
County Court, but I think this was two years ago, the coming
winter, but I may be mistaken about this. I think it was at the
same time I went to Bristol to see Dr. Peavler, and had my
throat treated." Here it may be observed that this deposition
was taken in November, 1897. The coming winter referred to
would have been the winter of 1898, and two years back from
that date would take us to the winter of 1896. The value of
this date will appear as we proceed in the discussion. Continuing,
the witness says: " To the best of my recollection I did not miss

a term while the sales were in progress, but I will not state positively about this; I may have done it." He then gives a narrative of the methods pursued by him in making the sales. He had arranged the delinquent list in alphabetical order, which he followed in making sales, and would draw a line across where he stopped at the end of a term of court, and made no other mark, and after each court he would write in pencil at the foot of the delinquent list that was posted at the court-house door that the sales would be continued until the first day of the next term. Where there had been previous adjournments he would run his pencil through them and write out another such adjournment.

The witness, T. G. Wells, testifies that he acted as attorney or adviser of Maxwell, the treasurer, with respect to the sale of delinquent lands in 1894 and 1895; that Maxwell's papers pertaining to said sales were left in his office; that he was sick and absent from one term of the County Court during that period, and did not hold any sales, nor did any one act for him either to sell or to adjourn; that he does not recollect positively which term of the court this was, but to the best of his memory it was the January term, 1895. If it was not the January term, 1895, he thinks it was the February term following, but that he cannot be absolutely positive about his having missed a term of the court during the sale, but this is his best recollection.

Vance, the clerk, merely testifies to what appears of record, and the record shows the regularity of the proceeding.

Miller states that he was the deputy sheriff of Wise county until January, 1895; that he aided Maxwell in making the sale of delinquent lands in 1894 and 1895 by crying the sale; that he is certain that Maxwell missed a term of the County Court while the sale was in progress; that no one represented him to adjourn the sale so far as he knows; that he thinks it was after he became high sheriff, but that he has no positive recollection about it. As he became high sheriff in 1895, the testimony of this witness tends to show that the failure to attend the term,

if any such failure occurred on Maxwell's part, was after the date of the sale in controversy, and in the winter of 1896, which corroborates Maxwell's own statement upon the subject.

Gilliam, another witness, testifies that he thinks Maxwell missed a term of the County Court during the progress of the delinquent sale; that just before a term of the court he visited Maxwell at his home, having heard that he was sick; that he found him unable to attend court, and that he did not attend the following term of the court; that Maxwell was suffering from a bad throat, and it was not long after that trip in the same year that Maxwell visited Dr. Peavler in Bristol, which is again corroborative of Maxwell's memory upon the subject.

Mr. Irvine testifies that he is a practicing attorney in Wise county; that he was requested by a number of non-resident clients, whose lands were advertised for sale, to settle the taxes with the treasurer before the sale; that he saw Maxwell in the early part of December, 1894, and told him that he wanted to settle before the December County Court, as he wished to be absent from the State at that time; that he was told by the treasurer there would be but few tracts sold at the December court, and that he could see him at the January court and settle then, and it would be in ample time; that he was away at the December court, but came to the January court expecting to have the settlement; that it is possible the matter was passed by again at that court with the understanding that they would take it up at the next, or February, term, but that he is certain that at either the January or February term he came for the purpose of making these settlements; that one or the other of these terms Mr. Maxwell was not in town and did not appear during the day; that he inquired among his friends, and was told he was down sick; that he waited during the whole day, and was on the lookout to see if any one would appear for him and hold a sale, but no one did so; that he also looked for a notice of adjournment, or continuance, but none was posted at the court-house, and no an-

nouncement was made so far as he knew; that, at a subsequent term, he made arrangements to settle, and that his recollection all along has been that Maxwell was absent at the January term, and that he settled with him at the February term; that he remembers that he took up some county claims for Mr. J. E. Lipps in these settlements, giving him drafts on clients and taking his claims and paying them to Maxwell, and that by reference to his books he finds that he sent the drafts to the bank on April 5, 1895; that the Circuit Court began that year on April 1st, and that it was during this court that the settlement was made; that he has an indistinct recollection of being at the March County Court, but being busy, as usual on a court day, and as County Court held that month only one day, Mr. Maxwell and himself agreed to let the matter go over until the next week, when he would return to the court-house to Circuit Court, and have more time to make the settlements; that he paid some forty or fifty delinquent tickets, and a great deal of time was required to make all the calculations; that during the first few months of these sales Mr. Maxwell sold very few tracts at each court; it was not until warm weather that he made any sales of consequence, but that he was present at each court, and was interested in watching the proceedings; " whether or not we arranged at the February court that he would not sell any lands in which I was interested, and that we would make our settlements later or not, I cannot now say, as I have no distinct recollection on the subject, but think this was most likely the case; I have recently written to Dr. Peavler, of Bristol, asking if he had any memorandum of when Mr. Maxwell came to him to have his throat treated, and have a reply dated December 1st ult., saying that he had nothing that would aid in fixing the date of that visit." It will be observed that Mr. Irvine does not state that he was authorized to settle the taxes for the Virginia Coal Company.

Our statute provides (section 661 of the Code) that where a purchaser has obtained a deed for land purchased at a tax sale,

which has been duly admitted to record, the title thus acquired can only be defeated by proof that the taxes or levies for which the real estate was sold were not properly chargeable thereon, or that the taxes or levies properly chargeable upon said real estate have been paid.

Section 666, under which Thomas claims title, provides that where land has been purchased by the Auditor and is not redeemed by its previous owner, his heirs or assigns, or some person having the right to charge the same with a debt, within two years from the date of such purchase, any person desiring to purchase it may file an application and comply with the provisions of that section, as was done by Thomas, and procure a deed, and that the provisions of section 661 shall apply to all deeds made under authority of this section. So that Thomas having complied with all the requirements of section 666 comes within the protection of section 661, and if that statute be valid and binding, his right is to be defeated only by showing that the real estate purchased by him was not properly charged with the taxes for which it was sold, or that they had been paid before the sale. That this statute at the least makes a *prima facie* case in favor of Thomas, cannot be questioned.

The Supreme Court of the United States said as to an almost identical law of the State of Iowa, which made the deed *prima facie* evidence in all courts as to certain facts: " The whole act exhibits an intention of the Legislature to enforce the payment of taxes, by securing purchasers at tax sales in their purchases, and thus making it dangerous for owners of property to neglect payment of taxes due the State. It removes difficulties which had before existed in the way of establishing a tax title, and at the same time it works no injustice to owners of land subject to taxation. The law determines when the taxes should be levied, and when they shall be paid, and it gives ample time within which to make the payment. It was under this act, and in conformity with its provisions, that the treasurer's deeds were made,

through which the defendant below made his claim. They are in the form prescribed by the statute. If the act is to have any effect at all, it is plain that the deeds cut off most of the averments upon which the plaintiff bases his attempt to obtain the cancellation he seeks. It is not open to him to aver and prove any allegation he puts forward to establish the invalidity of the deeds, except that the property was not subject to taxation, and that there was a fraudulent combination of the defendant with others to prevent bidding. The first of the averments is denied in the answer, and there has been no attempt to sustain it by evidence. Besides, the statute declares that the deed shall be *prima facie* evidence that the property was subject to taxation. They are made affirmative evidence." *Callanan* v. *Hurley,* 93 U. S. 387.

We have, then, a case where the averments of the bill are denied by the answer, and the testimony is conflicting and inconclusive as to the issue of fact upon which the controversy depends, and we have the decision of the Circuit Court in favor of the appellee, which must prevail, unless we are prepared to pronounce that decree erroneous.

As was said by Judge Riely in *Shipman* v. *Fletcher:* " The judgment of a court of competent jurisdiction is justly entitled to great weight. It is always presumed to be right until the contrary is shown. An appellate court will not overturn it unless satisfied that it is wrong. It devolves on the party complaining to show error, and to satisfy the appellate court that the judgment or decree complained of is wrong." 91 Va. 487, and authorities there cited.

But this is by no means the full strength of the case for appellee. He invokes the protection of section 661 of the Code, which, to apply the language of the Supreme Court of the United States in *Callanan* v. *Hurley, supra,* " removes difficulties which had before existed in the way of establishing a tax title, and at the same time it works no injustice to owners of land subject to

taxation. The law determines when the taxes should be levied, and when they shall be paid, and gives ample time within which to make the payment. It was under this act and in conformity with its provisions that the deeds of the treasurer were made through which the defendant below made his claim. They are in the form prescribed by the statute. If the act is to have any effect at all, it is plain the deeds cut off most of the averments upon which the plaintiff bases his attempt to obtain the cancellation he seeks. It is not open to him to aver and prove any allegation he puts forward to establish the invalidity of the deeds, except that the property was not subject to taxation."

We might safely rest here and feel justified in affirming the decree complained of. Section 661 of our Code, however, goes further than the Iowa statute which came under consideration before the Supreme Court in *Callanan* v. *Hurley, supra,* for it undertakes to make the deed conclusive upon all questions involved, save only that it may still be attacked by proof that the taxes for which the real estate was sold were not properly chargeable thereon, or that they had been paid.

In *Flanagan* v. *Grimmett*, 10 Gratt. 421, it was held that a tax deed acquired under the act of 1814 could not be questioned by parol proof of a failure to advertise the sale as the law prescribes, section 38 of that act providing that after the time of redemption allowed by the law had elapsed, the regularity of the proceedings under which the purchaser at the sale claims title, shall not be questioned, unless such irregularity appears on the face of the proceedings. See, also, *Hobbs* v. *Shumates*, 11 Gratt. 516.

Under statutes now in force, after the delinquency occurs in the payment of taxes, the tax payer has two years within which he may pay the tax, redeem his land, and annul the proceedings for any failure to comply with the terms of the law for the sale of delinquent lands. If he chooses to sleep upon his rights and permits his delinquency to continue for two years, and until his

land has been sold, he can only vacate the sale by showing that the tax is not due, or that it has been paid. As we have already seen, in the case before us all the proceedings were formal and regular by which the title of the Coal Company was divested, unless it can be maintained that there was a failure to adjourn the sale at the January term, 1895, and that such failure constituted a defect in the proceedings which was not cured by section 661.

It will be observed, in the first place, that the sale was duly advertised, and that it was in point of fact made. The hiatus, if any, in the continuity of the proceedings occurred by reason of the failure of the treasurer to attend the January term of the County Court, and to adjourn the sale. If that were so, it could have worked no actual injury or prejudice to the land owner. The sales were held in accordance with the original advertisement at the February term and were adjourned to the March term, and from that term to the April term, when the sale was made. It is difficult to perceive how the sale could have been injuriously affected by the omission to comply with the letter of the law.

That the case is covered by the decisions of *Flanagan* v. *Grimmett* and *Hobbs* v. *Shumates, supra*, is conceded, but it is contended that the authority of those cases is destroyed by the Fourteenth Amendment to the Constitution of the United States, which provides, among other things, " that no man shall be deprived of his property without due process of law." We apprehend that such has always been the law of this State, and we cannot think that Judge Allen, speaking for this court in two well considered cases, meant to decide otherwise. It is the duty of the State to cause the burden of taxation to fall equally upon all citizens, and to enforce the collection of taxes by such means as will compel each to bear his allotted burden, and in the performance of this duty the sale of the property delinquent, with an absolute right of redemption for two years after such sale, is

not a taking of the property of a citizen without due process of law; and a statute, which, after all this has been done, and a deed to the purchaser has been made, shuts off all inquiry with the exceptions heretofore stated, is a just and proper exercise of legislative power. *Callanan* v. *Hurley, supra; Phelps* v. *Meade,* 41 Iowa 470; *Thomas* v. *Jones,* 94 Va. 756; and Cooley on Taxation (Ed. 1876), pages 355-6, and note 1 to latter page.

In *Smith* v. *Cleveland,* 17 Wis. 573, it was held that " the Legislature is competent to declare what part of the proceedings required by law in the collection of taxes upon land, shall or shall not be essential to the validity of the tax sale or tax deed, and therefore competent to declare that after the execution and recording of the deed it shall not be invalidated by any defects or irregularities in such proceedings, in case the land was subject to the taxes levied upon it, and they were not paid," which is in substance our law.

The court further held in that case that " where a tax deed was not by law to be given until three years after the tax sale, a provision declaring that it should not be invalidated by any irregularities in the proceedings might be sustained as a statute of limitations."

In *Reynolds* v. *Baker,* 6 Coldwell, 221, a statute which prescribes the time within which land sold for taxes may be redeemed is held not to be in the nature of a statute of limitations, but the court declares it to be a rule of property. Now, if it be a limitation it bars the action after the expiration of the period; if it be a rule of property, then the right is vested upon the expiration of the time allowed for redemption. Without deciding between these two cases, we feel no difficulty in saying that the presence of a provision in a statute prescribing a reasonable period within which an act may be done at the will and pleasure of the citizen which will prevent the loss or forfeiture of a right or remedy, is a circumstance of the utmost importance to be considered in determining whether or not such statute is obnoxious to the

constitutional objection of depriving the citizen of such right or remedy without due process of law, and especially is this the case where, in the just exercise of the taxing power, with the view of equalizing the burdens necessary to be imposed for the conduct of government, laws are enacted to give confidence to purchasers in the sufficiency of tax titles and thereby promote the most efficient and perhaps the only means for the collection of delinquent taxes. To the same effect see *Thomas* v. *Jones*, 94 Va., at page 758, where section 661 was considered and its validity sustained.

For the foregoing reasons we are of opinion that the decree of the Circuit Court should be affirmed.

*Affirmed.*