## WILDER v. DENNIS et al.

(Circuit Court of Appeals, Fourth Circuit. November 7, 1912.)

No. 1,096.

1. TAXATION (§ 760*)—TAX DEEDS—RECITALS—VIRGINIA STATUTE.

Act Va. Feb. 11, 1898 (Acts 1897–98, c. 306), amending Code 1887, § 666, relating to sales of land for taxes, was intended to effect a radical change of policy in the collection of taxes on land, and to make the law in that respect more efficient by giving to a purchaser from the state a good title which can be defeated only by proof that the taxes were not properly chargeable on the land or that they had been paid. The provision that the deed of the clerk to lands sold by the state shall "set forth all the circumstances appearing in the clerk's office in relation to the sale" has reference to the sale made by the clerk, and not to the previous sale to the state, and does not require the circumstances to be set out with technical nicety; but a substantial compliance with the provision is sufficient.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1509; Dec. Dig. § 760.*]

2. TAXATION (§§ 674, 746*)—TAX SALES—VALIDITY—PURCHASE BY OFFICER.

The purchase of land sold by the state for taxes by the clerk who makes the sale, or in his interest, is not contrary to the public policy of Virginia, and while Code Va. 1887, § 656 (Code 1904, p. 320), provides that where the clerk is purchaser the deed shall be made by a commissioner, the clerk may lawfully execute a deed to a third person, although he is himself interested in the purchase.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1357–1360, 1491, 1492; Dec. Dig. §§ 674, 746.*]

3. TAXATION (§ 734*)—TAX SALES—VALIDITY—VIRGINIA STATUTE.

A tax deed made by the clerk for land sold by the state under Act Va. Feb. 11, 1898 (Acts 1897–98, c. 306), is not invalidated by the fact that the preceding order of publication does not state the amount for which the land was sold to the state, which is not required by the statute.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1470–1473; Dec. Dig. § 734.*]

4. TAXATION (§ 734*)—TAX SALES—VALIDITY—VIRGINIA STATUTE.

Notice of an application to purchase the land is required by the statute to be given to the person in whose name the land stood on the commissioner's book at the time it was sold to the state and to others only in case of a subsequent transfer shown by such book, and where there was no such transfer, and the record owner had parted with his interest, a clerical error in the application in describing the land as in three tracts, instead of two, does not invalidate the deed which contains a correct description.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1470–1473; Dec. Dig. § 734.*]

5. TAXATION (§ 734*)—TAX SALES—VALIDITY—VIRGINIA STATUTE.

A sale and deed are not invalidated by a clerical error in the clerk's order for publication of the notice in giving the name of the newspaper

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

designated incorrectly, where there was but one paper in which it could lawfully be published.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1470–1473; Dec. Dig. § 734.*]

6. TAXATION (§ 734*)—TAX SALES—VALIDITY—VIRGINIA STATUTE.

An erroneous statement of fact in such published notice is immaterial where it did not affect any one who was entitled to notice.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1470–1473; Dec. Dig. § 734.*]

7. TAXATION (§ 734*)—TAX SALES—VALIDITY—VIRGINIA STATUTE.

Such act provides that Code Va. 1887, § 661 (Code 1904, p. 321), shall apply to tax deeds made thereunder, and under such section a deed cannot be defeated for a mere irregularity in the prior proceedings, but only by proof that the land was not subject to the tax, or that the tax had been paid.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1470–1473; Dec. Dig. § 734.*]

8. TAXATION (§ 679*)—TAX SALES—VALIDITY—VIRGINIA STATUTE.

Under such statute, where two tracts of land stand on the commissioner's book in the name of the same person, both at the date of sale to the state and at the date of an application to purchase, both may be included in and purchased on the same application.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1361, 1362; Dec. Dig. § 679.*]

9. TAXATION (§ 791*)—TAX TITLES—EJECTMENT AGAINST CLAIMANT UNDER TAX DEED—LIMITATION—VIRGINIA STATUTE.

The provision of Act Va. March 7, 1900 (Acts 1899–1900, c. 1132) that "no suit shall be brought to set aside, cancel or amend" a tax deed, except for fraud, etc., unless within two years after it is recorded, construed under the Virginia rule that a statute of limitations is a statute of repose, applies to an action of ejectment as well as a suit in equity, but does not apply in favor of a tax deed which was executed and recorded prior to its passage.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1571; Dec. Dig. § 791.*]

In Error to the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry C. McDowell, Judge.

Action at law by Victor A. Wilder against William L. Dennis, John C. McCoy, George H. Stone, Joshua Baisden, and L. C. Bell. Judgment for defendants, and plaintiff brings error. Affirmed.

Maynard F. Stiles, of Charleston, W. Va., and M. O. Litz, of Welch, W. Va., for plaintiff in error.

William H. Werth, of Tazewell, Va., and S. M. B. Coulling, of Tazewell, Va., for defendants in error.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD District Judge.

GOFF, Circuit Judge. This writ of error is prosecuted to a judgment of the court below, entered in an action of ejectment instituted by Victor A. Wilder against William L. Dennis, John C. McCoy, George H. Stone, Joshua Baisden, and L. C. Bell. In due time the case was tried before a jury, which, by direction of the court below, returned a verdict for the defendants Pending the proceedings in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the court below, a motion was made to set aside the verdict, as having been improvidently directed, which motion the court overruled, filing an opinion relating to the points raised and argued by counsel as involved in said motion. The court, yielding to the insistence of counsel for the plaintiff below, then granted a reargument, which was duly had, when the court, adhering to the conclusion originally reached, filed an additional opinion and entered the judgment referred to. The assignments of error are many, the specifications under them are multitudinous, and the argument to sustain them, if not convincing, is interesting and plausible. We can safely say that each and every of the points presented by counsel for plaintiff in error have been either directly or indirectly met, answered, and effectually disposed of by the clear reasoning of the trial judge in comprehensive and admirable opinions filed by him during the progress of this litigation in his court. In fact, said opinions relating as they do to many of the most important questions involved in the Virginia statutes concerning real estate, the proper construction of said legislation, and the method of procedure in case of forfeiture and sale for delinquent taxes thereunder, as also the rules bearing on the admission and rejection of testimony pending the trial of an action of ejectment, are most valuable contributions to our court decisions on those intricate and important matters, and deserve the concurrence they impel and have.

The opinion directing the verdict reads as follows:

"The plaintiff to show title to the 2,093-acre tract in controversy introduced: (1) A patent from the commonwealth of August 2, 1875, to Wm. Collins granting the said tract. (2) A deed from Wm. Collins to J. D. Sargeant of May 7, 1883, conveying the said 2,093-acre tract. (3) A deed dated December 27, 1887, from J. D. Sargeant et al. to J. D. Sargeant, Lewis Rodman, and Thos. Graham, trustees, conveying inter alia (tract 14) the 2,093-acre tract and (tract 16) another tract on Tug river, acreage not stated, recited to have been conveyed by Wm. Collins and wife (by deed dated October 10, 1886) to J. D. Sargeant and recorded in Buchanan county deed book B, p. 254, etc. (4) Sundry appointments of successors to the trustees named in the deed of December 27, 1887, vesting the title in Torpin, Lambert, and Pepper as trustees. (5) Deed of December 13, 1901, from the foregoing trustees to V. A. Wilder. After introducing some parol evidence, now of no interest, the plaintiff rested.

[1] "The defendant, after having offered and withdrawn some other papers, offered in evidence a tax deed of March 2, 1900, from W. L. Dennis, clerk, to R. Walter Dotson. It was objected by the plaintiff that the deed does not contain the recitals required by the Act of February 11, 1898 (Acts 1897–98, pp. 343, 345), and that consequently the deed does not fall under the protection of section 661, Code 1887 [Code 1904, p. 321]. It is required by the act of 1898 that the deed shall 'set forth all the circumstances appearing in the clerk's office in relation to the sale,' and the gist of the dispute is as to the intention of the Legislature in using the above-quoted language. The deed offered in evidence does recite, in a manner at least, all of the essential circumstances which should appear in the clerk's office in relation to the sale made by the clerk to Dotson, and I am satisfied that this is the sale intended by the Legislature and not the sale made to the commonwealth in 1897. Flanagan v. Grimmet, 51 Va. 421, 436. The contention of the plaintiff in effect is that the Legislature by the language quoted above intended that the circumstances should be set forth with the particularity and nicety required by the strictest rules of pleading; that is to say, that the facts should be stated and that conclusions should not be substitut-

ed therefor. Quite aside from the persuasive opinion of the Court of Appeals in Flanagan v. Grimmet, supra, it seems to me that the probabilities are great that the Legislature did not intend to require the impracticable particularity contended for by the plaintiff. Under the decision in Building & Loan Association v. Glenn, 99 Va. 460 [39 S. E. 136], a tax deed is by force of section 661 of the Code not conclusive in certain respects, and consequently any real injustice done the true owner of the land by a tax deed can be shown notwithstanding the deed. Prior to the act of 1898 the method provided by law for enforcing collection of delinquent taxes on real estate had proven highly inefficient. A 'tax title' was regarded as valueless; practically no one would purchase delinquent lands at the sales held by the county treasurers, and in consequence there were hundreds of thousands of acres standing on the commissioners' books as sold to the commonwealth, but the state was unable to collect the taxes thereon. In amending section 666, Code 1887, by the act of February 11, 1898, the intent of the Legislature to adopt a radical change of policy is made most manifest. The intention was to make easy the acquirement of valid tax titles and thus to encourage the purchase by individuals of lands previously sold to the commonwealth. In enacting, therefore (Acts 1897–98, p. 345), that the deed made by the clerk to the purchaser 'shall set forth all the circumstances appearing in the clerk's office in relation to the sale,' it seems very clear that there was not an intent to require that such circumstances be set forth with the accuracy or with the technical nicety required for instance in common-law pleadings. This conclusion is fortified by the fact that in the act of 1898 (pages 345, 346) it is provided: 'The provisions of section 661 of the Code of Virginia [of 1887] shall apply to deeds made under authority of this section.' Section 661 of the Code of 1887 provides that when a deed has been obtained and recorded by a purchaser at a tax sale the title thereby conveyed shall be defeated only by proof that the taxes or levies for which said real estate was sold were not properly chargeable thereon; or that the taxes and levies properly chargeable thereon have been paid. It is true (Va. B. & L. Ass'n v. Glenn, supra, 99 Va. 460 [39 S. E. 136]) that in making section 661 applicable to the tax deeds provided for by act of 1898 the Legislature did not intend that the requirements of the act of 1898 should be disregarded. But the fact remains that by referring to and making section 661 applicable the Legislature clearly indicated an intent that substantial compliance with the act of 1898 was sufficient. The tax deed under discussion does set forth all the circumstances, not with the greatest possible technical nicety, but in a manner such as I must regard as within the meaning and intent of the act of 1898.

[2] "In connection with the foregoing tax deed another matter may be here mentioned. The plaintiff attempted to introduce evidence tending to show that the application to purchase made by Dotson was in fact made by him as the secret agent (as to two-thirds interest) of Dennis, the clerk, and McCoy, the deputy clerk, of the Buchanan county court. Assuming the fact to be as stated, objection to this offer was sustained. The argument for plaintiff is based chiefly on a supposed violation of public policy in treating as valid a tax deed made under such circumstances. Independent of any other reason, the case of Yancey v. Hopkins, 15 Va. 419, 433, 434, tends strongly to overturn the argument founded on a supposed public policy. However, even a more conclusive answer to the argument is found in the fact that the Legislature which, on March 5, 1894 (Acts 1893–94, p. 738), first authorized the clerk to sell lands previously sold to the commonwealth, had only seven days prior thereto (Acts 1893–94, p. 473; Act of February 26, 1894) re-enacted section 656 of the Code of 1887 [Code 1904, p. 320]. This section read originally and as re-enacted: 'When the clerk is a purchaser, the deed for the land purchased by him shall be executed by a commissioner appointed by the circuit court of the county * * * wherein the land is situated.' Even if the act of 1898 had been the first that authorized clerks to sell delinquent lands, the mere fact that the Legislature in 1898 left in force section 656 of the Code would be a sufficient reason for holding that it is not contrary to the policy of the law that clerks should become pur-

chasers. Even under such circumstances there would be no warrant for assuming that the Legislature in 1898 was ignorant of the existence of section 656; and it would be the duty of the court to assume the contrary. Sutherland, Statutory Construction, § 333; School Board v. Patterson [111 Va. 482] 69 S. E. 337–339. But as the prototype of the act of 1898 was enacted by the same Legislature that had only a few days previously re-enacted section 656, it is clear that we cannot assume ignorance of section 656 on the part of the Legislature which enacted the act of March 5, 1894. And it is highly improbable that in amplifying in 1898 the act of March 5, 1894, the Legislature of 1898 intended an unexpressed change in the policy of the law. The only permissible assumption therefore is that in 1898 the Legislature knew of and intentionally left in force section 656. If this assumption be proper, it is manifest that the Legislature in 1898 intended that the clerk might himself be the purchaser at a tax sale and purposely left in force a provision by which the deed to him could be executed by a commissioner appointed for the purpose. And if so, it is very clear that we cannot assert that a tax deed from the clerk to Dotson, the clerk being an interested party and intending to later take a conveyance from Dotson, is in violation of the policy of the law. It is said that the law may permit the clerk to be purchaser when he acts 'openly and above board' and has a commissioner make the deed to him, but that it does not sanction 'secret proceedings' such as are here sought to be shown. If the land was delinquent for 1895 taxes, and if it had been bid in by the commonwealth, I can perceive no reason in morals or in law why the arrangement between Dotson and the defendants was improper. If the notice required by law was thereafter duly given and if the state and county received the amounts due them, it could be of no interest to any one whether the clerk and his deputy appeared on record to be the purchasers, or whether some one else appeared to be the sole purchaser.

"Another argument for plaintiff is based on the theory that where the clerk is the real purchaser, although the sale is made to a trustee for the clerk, the deed must be made (under section 656) by a commissioner. In enacting section 656 and its prototypes (originally act of March 8, 1846; Acts 1845–46, p. 14, § 4; see, also, Acts 1872–73, p. 379; chapter 37, § 18, Code 1860), the intent was, I think, first, to allow clerks to purchase delinquent lands, and, second, *in the interest of the clerk*, to avoid the incongruity of a deed from the clerk in his official capacity to himself in his personal right. If therefore the clerk procures a trustee to take the tax title, there is no reason found in the language of the statute why a commissioner should make the deed. In fact, a deed made by a commissioner to John Smith, avowedly or secretly, trustee for the clerk, would be unauthorized and of highly doubtful validity. It follows that this objection after all can be founded only on a supposed violation of the policy of the law—which has been sufficiently discussed.

"After having heard much testimony concerning the possession of the land, none of which is now of interest, the plaintiff moved that the tax deed be stricken out. The grounds of this motion, in addition to the ground that the recitals in the deed are insufficient, are:

"'(1) The order of publication falsely states the amount of taxes for which the lands were sold to the commonwealth.

"'(2) The land proceeded against, as shown by the order of publication, consists of three tracts, and the land conveyed consists of two tracts, which are necessarily distinct and different tracts.

"'(3) The order of publication shows that it was directed by the clerk to be published in one newspaper and it appears to have been published in a different newspaper.

"'(4) The order of publication does not name the proper parties in interest to whom notice is required under the statute.

"'(5) The order of publication also falsely states that there are no trustees, mortgagees, or beneficiaries under any deed of trust or mortgage on record, or at least it fails to state that there are any trustees, mortgagees, or beneficiaries shown by the records of Buchanan county at the time of the alleged application to purchase the land conveyed by the deed or any other land.

" '(6) The order of publication, which includes the application, does not state in whose name the land stood at the time of filing the application.

" '(7) The misrecitals or false recitals in the deed as to the amount of taxes for which the land was sold to the commonwealth, the number of tracts included in the land proceeded against, and the misrecitals or failure to recite that any trustees, beneficiaries, or mortgagees appear of record in Buchanan county at the date of the application, was misleading to the owner or persons beneficially interested in the land or holding the legal title.

" '(8) It is shown on the face of the proceedings, particularly the order of publication, that the land charged with taxes in separate tracts was sold to the commonwealth in bulk at a bulk sale and therefore shows on the face of the order of publication a void sale to the commonwealth, and no prejudice to the rights of the landowner could arise from 'any proceeding under the order of publication. And if. the lands were sold to the commonwealth in separate tracts the proceeding was without jurisdiction to sell more than one tract,·and therefore the deed and. the whole proceeding is void.'

"It was after the foregoing motion had been made and overruled that plaintiff introduced in· evidence (plaintiff's Exhibit 015) an extract copy from the Buchanan county commissioner's Book (Land Book) for the year 1895 and (plaintiff's Exhibit 016) an extract copy from the auditor's office, being the treasurer's report of sale to the commonwealth in 1897.

"I shall consider the foregoing grounds in the above order.

[3] "(1) The order of publication does not undertake to state the amount for which the land was sold to the commonwealth. It does contain the ap‡ plication to purchase wherein Dotson agrees 'to pay for said real estate the amount for which the sale to the commonwealth was made, together with' certain other sums required to be paid. The statute does not require (Acts 1897-98, pp. 343, 344) that the amount for which the. land was sold to the commonwealth be stated. It only requires an offer to pay a sum total, which includes the aforesaid sum.

"It is true that there is a discrepancy between the total offered in the application and the amount recited in the tax deed, if the sum of $152.06 was intended as a statement of the total amount offered. But the application is not necessarily so to be read. The sum of $152.06 is probably the total of the amount for which the land was sold to the commonwealth plus the taxes and levies that would have accrued since if the land had not been sold to the commonwealth, on which interest, not calculated and not set out in the application, was also offered to be paid. The sum total stated in the deed ($205.07) presumably consists of $152.06 plus interest, calculated according to the act of 1898, and the costs·and expenses of the application.

"But even if we should without warrant assume that the amount offered in the application was less than should have been offered, so long as the amount actually paid was the proper amount, I do not perceive that the tax deed is thereby rendered invalid. Only the commonwealth and the county of Buchanan were interested in the amount of the offer. They presumably received all that was due them and they are not complaining. The amount offered by the applicant had not the slightest effect on the trustees' right to redeem, or on the amount they must have paid to redeem.

[4] "(2) Inasmuch as the three tracts mentioned in the application, as reproduced in the order of publication, aggregate 2,749 acres, and as the two tracts conveyed by the tax deeds also aggregate 2,749 acres, there is good reason for the conclusion that the recital in the application is a mere clerical misprision. For the deed is a more formal instrument than the application, and therefore more apt to contain the correct description.

"The defendants, by force of section 661, Code 1887, had a right to stand on the tax deed alone. The attack on it had to come from the plaintiff, on' whom the burden of showing the invalidity of the tax deed rested. As both the application and the tax deed referred to the commissioner's land book of 1895 as identifying the land, it seems to me that the court could not, in the absence of said land book, assume that it showed three tracts assessed to J. D. Sargeant and therefore conclude that the application was for different land from that conveyed by the tax deed. Where the party having the burden

of proof does not offer evidence referred to in the papers attacked which would demonstrate whether the difference between the application and the deed was a clerical error or not, the court should assume that such evidence would not be favorable to the attacking party. As the evidence stood when the motion to strike out the tax deed was made, the variance between the application and tax deed was only in a part of the description and should have been treated as a clerical error falling under the doctrine, 'Falsa demonstratio non nocet.' Having in view the legislative intent shown in the act of 1898, I know of no reason why an innocuous partial discrepancy between the application and the tax deed should invalidate the latter. But. in addition, the notice required by the act of 1898 is only to be given: (1) To the person in whose name the land stood at the date of the sale to the commonwealth; (2) and, under certain circumstances only, to the person in whose name the land stands at the date of the application on the commissioner's book; and (3) to certain trustees, mortgagees, and beneficiaries under deeds of trust recorded less than 10 years prior to the application. The meaning of the language, 'the person in whose name the real estate stood at the date of the sale thereof to the commonwealth,' is the person in whose name the real estate stood *on the commissioner's book*. The context and a reference to section 469, Code 1887, makes this quite plain. By that section, when land is sold to the commonwealth the commissioner shall continue the land *'upon his land book' in the name of the former owner*. And in the act of 1898 notice is to be given the person in whose name the land stands on the commissioner's book at the time of the application only in the event the land has been transferred contrary to the provisions of section 469. 'Transferred' on what book? Of course, on the commissioner's book. As the land stood on the commissioner's book in the name of J. D. Sargeant at the time of the sale to the commonwealth (March 23, 1897), as it had not been transferred on the commissioner's book (so far as the evidence shows) to any one else, and as the trust deed of December 28, 1887 (even if any trust deeds except those to secure the payment of money were intended) was recorded April 16, 1888, and more than ten years prior to the application (August 24, 1899), it is clear that the act of 1898 did not require notice to any one except J. D. Sargeant. The trustees under the deed of 1887 apparently not having paid the commissioner of revenue (section 524, Code 1887), his fee therefor did not secure a transfer of the land to themselves on the commissioner's land book (sections 459, 461, 470, Code 1887), when they were authorized so to do, and therefore cut themselves off from any right to notice of Dotson's application under the terms of the act of 1898. As only J. D. Sargeant had a right to notice, the error in the application, or in the order of publication, in misdescribing the land as *three* tracts was wholly immaterial.

"For J. D. Sargeant, of all people, would be the last to be misled by such error, as he had years before wholly parted with every vestige of interest in the land.

"However, if it be admitted that the court erred in refusing to strike out the tax deed at the time the motion was made, still the question now is whether or not the verdict should be set aside and a new trial granted. Immediately after the motion to strike out the tax deed was overruled, the plaintiff put in evidence (015) an extract copy of the commissioner's book for the year 1895. This paper shows that the land assessed to J. D. Sargeant for 1895 consisted of *two* tracts on Tug river, aggregating 2,749 acres. This evidence makes it certain that the recital in the application that the land consisted of *three* tracts is a mere error, which cannot overcome and obliterate the remainder of the description. To grant a new trial under such circumstances would be unjustifiable. The ruling on the motion to strike out the tax deed, even if regarded as erroneous when made, in view of the evidence then before the court, has become right in view of the evidence subsequently introduced. To grant a new trial on such ground would be to sanction the theory that a party may knowingly hold back material evidence in his possession, and would be to order a retrial which would of necessity lead to no change in result. However, too much is conceded in assuming that the refusal to strike out the tax deed may have been er-

roneous when made. The application describes the land applied for by reference to the land books of 1895, 1897, and 1900. 'That is certain which may be made certain.' The court would have been in error had it sustained the motion without requiring the plaintiff to produce these land books. It would have been deciding that the land applied for was not the same as that conveyed by the tax deed without considering the entire description of the land applied for as contained, by reference, in the application.

[5] "(3) The third ground of the motion to strike out the tax deed is largely, if not wholly, deprived of force by the admission made in open court by counsel for plaintiff: 'It is admitted that at the time of the publication of the order of publication there was but one paper published in Buchanan county.' The record reads: 'And it is ordered that a copy of the said application be published once a week for four successive weeks in the Grundy Messenger, *a weekly newspaper published in Buchanan county, Virginia.* * * *' And 'I hereby certify that the subjoined order of publication was duly published in the Buchanan Messenger, *a weekly newspaper published in the town of Grundy, in Buchanan county, Virginia,* for four successive weeks,' etc. If there was at that period only one paper published in Buchanan county, it follows that the application was published in the paper in which it was intended by the clerk that it should be published. Evidently we have here again a mere clerical error of no moment whatever, which could have done no harm to any one, and which could by no possibility have harmed J. D. Sargeant—the only person in all the world to whom notice had to be given—for he had long since ceased to have the slightest interest in the matter.

"(4) The fourth ground of the motion has already been sufficiently discussed. If the trustees under the deed of 1887, or their successors in office, had complied with the law, the land would have stood on the land book (commissioner's book) at the time of Dotson's application in the name of the trustees, and in such event, but only in such event, the trustees would have been persons entitled to notice. As the act of 1898 reads, however, and as the land never was transferred on the commissioner's books, Sargeant, and he alone, was entitled to notice. The order of publication does name J. D. Sargeant, and this ground of objection appears to be without merit.

[6] "(5) The application does state that there are no trustees, mortgagees, or beneficiaries shown by the records of Buchanan county. As the act of 1898 only required certain trustees, mortgagees, and beneficiaries to be set out on the application, and as in fact there were no such trustees, etc., I am unable to say that there was even an irregularity in the application in this respect. It is argued that the statement might have misled the trustees. As the trustees were not entitled to notice, I do not perceive the right to assert that they could have been misled. Only the person entitled to a notice can claim to have been misled by an error in the publication of such notice. Moreover, there was evidence, which was not contradicted, and which quite satisfactorily showed that the trustees and several of their agents had actual notice of the sale to the commonwealth having been made and of Dotson's application to purchase, and that the trustees intentionally declined to redeem the land on the ground that they had previously stripped it of all value. In this connection, see Stevenson v. Henkle, 100 Va. 591 [42 S. E. 672]; 23 Cyc. 914–916, 994, 995; 15 Ency. Pl. & Pr. 269; McQuiddy v. Ware, 20 Wall. 14 [22 L. Ed. 311]; Corn Ex. Bank v. Applegate [97 Iowa, 67], 65 N. W. 1007; Irions v. Keystone [61 Iowa, 406], 16 N. W. 349; Turner v. Case [133 N. C. 381], 45 S. E. 781; Satterlee v. Grubb [38 Kan. 234], 16 Pac. 475; Bogart v. Kiene [85 Minn. 261], 88 N. W. 748; Stover v. Hough [47 Neb. 789], 66 N. W. 825; Reed v. Thompson [19 Neb. 397], 27 N. W. 391; Clark v. Tull [113 Iowa, 143], 84 N. W. 1030; McBride v. Harn [52 Iowa, 79], 2 N. W. 962; Zobel v. Zobel [151 Cal. 98], 90 Pac. 191.

"(6) The sixth ground of objection seems to be based only on a misapprehension of the facts. In the application, as reproduced in the order of publication, it is said: 'Said real estate is described as 2,749 acres of land and now stands on said commissioner's book in the name of said J. D. Sargeant.'

"(7) The seventh ground has been sufficiently discussed. If the trustees and their beneficiaries had been entitled to notice, and if the trustees had not had actual notice, this objection might be of importance.

[7] "(8) The assumption that the two tracts were sold en masse to the commonwealth in 1897 in violation of section 639, Code 1887 (Code 1904, p. 313), does not seem to me to be justified by the facts in evidence. If, as by law should have been the case, the two tracts were assessed separately, there is a presumption that the treasurer obeyed the law and sold them to the commonwealth separately. And the mere fact that the report of the sale is ambiguous and may (or may not) indicate a sale en masse is not sufficient to overcome this presumption. Again, the ambiguous report did not in the least prevent redemption of either or both tracts, and did the owners of the land no harm. Moreover, the obvious intent of the Legislature in the act of 1898 forbids that the plaintiff be allowed to avail himself of the supposed irregularity. In Va. B. & L. Ass'n v. Glenn, supra, 99 Va. 460, 468 [39 S. E. 136, 139], it is said: 'When he [the grantee in the tax deed] has in fact complied with all the provisions of the statute [act of 1898], and gotten rightly his deed, he comes within the protection of section 661, and *no question can be raised as to the regularity of the proceedings by which the commonwealth acquired title to land* conveyed to him by his deed, except as therein provided.'

[8] "The alternative ground of objection stated in the eighth paragraph of the grounds for the motion to strike out the tax deed seems to be based on the theory that, if the two tracts were separately sold to the commonwealth, the proceeding by Dotson is fatally defective in that he acquired title to two tracts in one proceeding. The act of 1898 does not seem to me to authorize such contention. Where two tracts stand on the commissioner's book in the name of one and the same person, both at the date of the sale to the commonwealth and at the date of the application, nothing in the language of the act of 1898 indicates that the applicant must make two separate applications, have two orders of publication, and obtain two deeds. The intent of the act being to facilitate tax sales, to encourage tax purchasers, and to make tax titles more secure, any ambiguity in the statute in the respect in question should be solved in favor of the tax title. And, further, the owners at any time during the four months allowed them for redemption could undoubtedly have redeemed both or either of the tracts. If, for instance, the trustees had desired to redeem the 2,093-acre tract alone, it would have been an easy task to ascertain from the commissioner's book for 1895 (a record in the clerk's office) the taxes for the year 1895 on the 2,093-acre tract, and it was a mere matter of computation to then ascertain the amount necessary to be paid to the clerk to redeem only the 2,093-acre tract. Again, the evidence, showing actual notice of Dotson's application to the trustees and their intentional refusal to redeem, disposes of any argument founded on a supposed inconvenience or hardship to the trustees. In the face of such evidence it is manifest that this objection to the tax deed, like several others already mentioned, is founded on an imaginary injustice having no existence in fact.

"All of the objections to the tax deed being considered, it remains to be said that the validity or invalidity of the deed depends largely on the doctrine of law to be applied. In many of the states tax titles, even when derived as a result of a sale of land already validly vested in the state, are so regarded that very slight irregularities are fatal. And such was at one time the Virginia doctrine. Wilson v. Bull, 34 Va. 22; Boon v. Simmons, 88 Va. 259 [13 S. E. 439]; Bond v. Pettit, 89 Va. 474 [16 S. E. 666]. But since 1898 in Virginia this doctrine does not prevail and is clearly contrary to the legislative intent. Thomas v. Jones, 98 Va. 323 [36 S. E. 382]; Va. Co. v. Thomas, 97 Va. 527 [34 S. E. 486]; Va. Ass'n v. Glenn, 99 Va. 460 [39 S. E. 136]; Stevenson v. Henkle, 100 Va. 591 [42 S. E. 672]. While the act of March 7, 1900 (Acts 1899–1900, p. 1234) is not retroactive and does not apply to the case at bar, still it is of persuasive force in arriving at the intent shown by the act of 1898. The act of 1900 clearly indicates that harmless irregularities in the application and proceedings in the clerk's of-

fice are not to invalidate the tax deed, and it seems reasonably clear that such was the intent of the act of 1898.

"The trial was concluded by a peremptory instruction to the jury to bring in a verdict for the defendants. A motion to set aside this verdict was made. As there was no disputed question of fact essential to the validity of the tax deed, it follows that, if my reasoning hereinabove set out be sound, the peremptory instruction was proper.

"The motion to set aside the verdict will be overruled, and judgment in accordance with the verdict will be entered."

The court below in disposing of the questions raised on the reargument, said:

[9] "(1) Under the act of March 7, 1900 (Acts 1899–1900, p. 1234), the first question is as to the propriety of construing the language, 'no suit shall be brought to set aside, cancel or annul such deed,' except for fraud as herein provided, unless within two years,' etc., as applicable to an attack made on a tax deed in the trial of an ejectment suit. On superficial consideration of the question it may seem proper enough to accept as conclusive the text of 37 Cyc. p. 1500, and the considerable array of decisions from sundry other states cited in support thereof, and to hold that the language used by the Legislature does not apply to the case at bar. However, the statute is a Virginia statute and should be construed according to the settled doctrines of the Virginia Court of Appeals.

"Beyond any question the proviso in question is a statute of limitation. In Virginia statutes of limitation are statutes of *repose*. In Taylor v. Burnsides, 42 Va. 166, 187, it is said: 'The statutes of limitation are *emphatically statutes of repose;* * * * they attribute a wrongful inception to the possession and enjoyment which they protect.' In Va. Co. v. Hoover, 82 Va. 449, 454 [4 S. E. 689, 692], it is said: 'The statutes of limitation are to be enforced by the courts like any other statute. It has been often said by this court that they are *statutes of repose.* * * *' In Templeman v. Pugh, 102 Va. 441–445 [46 S. E. 474, 475], it is said: 'Statutes of limitation are *statutes of repose*, and especially is this true as to the estates of the dead. They are founded on a sound public policy, and should be *so construed as to advance the policy they were designed to promote.*' See, also, 4 Minor's Inst. (3d Ed.) p. 607.

"If the proviso in the act of March 7, 1900, is to be so construed as to effectuate the intention of the Legislature, and so 'as to advance the policy' it was 'designed to promote,' we cannot give it the strict, literal interpretation insisted upon by counsel for plaintiff. If construed literally, the statute fails to accomplish in large part the purpose manifestly intended. It protects invalid tax titles (which have been recorded over two years) only against suits in equity but does not protect them against suits at law. Thus construed the average tax title is merely an *unremovable cloud* on the delinquent taxpayer's title. The delinquent landowner remaining in possession cannot maintain ejectment (Steinman v. Vicars, 99 Va. 595, 599 [39 S. E. 227]) and he cannot in equity maintain a suit to annul the tax deed. Thus construed, the statute is an absurdity and defeats very largely the clear purpose of the Legislature. The statute must, in order to carry out its purpose, be construed as applicable to any attack, made in any form of suit or action, if the period of limitation has run before the suit or action is instituted. This present action was brought against persons in possession who claimed under a tax title. If the plaintiff succeeds in this action, his objections to the validity of the tax title will have to be sustained. In other words, this present suit is, and had to be, in effect, a suit to annul the defendant's tax title.

"(2) The next question is as to the propriety of construing the proviso as applicable to a tax deed which was recorded prior to the passage of the act. In construing statutes of limitation, where the intent of the Legislature is not made entirely clear, the courts generally adopt one of the three following constructions: (1) Read the statute as applying only to causes of action arising after the passage of the statute. (2) Construe the statute as applying

to such existing actions only as have already run out a portion of the statutory time, but which still have a reasonable time left for prosecution before that statutory time expires. (3) Begin the period of limitation as to existing causes of action with the date of the statute. See 25 Cyc. 995; Sohn v. Waterson, 17 Wall. 596 [21 L. Ed. 737]. See, also, Terry v. Anderson, 95 U. S. 628 [24 L. Ed. 365]; Koshkonong v. Burton, 104 U. S. 668 [26 L. Ed. 886]; Vance v. Vance, 108 U. S. 514 [2 Sup. Ct. 854, 27 L. Ed. 808]; McGahey v. Virginia, 135 U. S. 705 [10 Sup. Ct. 972, 34 L. Ed. 304]; Wilson v. Iseminger, 185 U. S. 55 [22 Sup. Ct. 573, 46 L. Ed. 804]; Sayre v. Wisner, 8 Wend. (N. Y.) 661; 19 Am. & Eng. Ency. (2d Ed.) 176. We are here construing a Virginia statute. If there be room for choice among the three constructions, the one adopted by the Virginia courts should, of course, be followed. It is at least quite probable that the Virginia doctrine is that the proviso should be construed only as applying to tax deeds made after the passage of the act. See Elliott v. Lyell, 7 Va. 269, 279; Com. v. Hewitt, 12 Va. 181, 187; Day v. Pickett, 18 Va. 104, 109; Shepherd v. Larue, 20 Va. 529, 531; Mercer v. Beale, 31 Va. 189, 208; Duval v. Malone, 55 Va. 24, 28; Philips v. Com., 60 Va. 485. 523; Price v. Harrison, 72 Va. 114, 120.

"Bickle v. Chrisman, 76 Va. 678, is not in point. The statute of limitation there in question was in force years before the conveyance had been made. See 2 Code 1849, p. 593, § 13. Town v. Pace, 66 Va. 1 [18 Am. Rep. 663], is also not quite in point, as the statute there was not a statute of limitation.

"But there exists a still more satisfactory reason for declining to read this proviso as applying to any tax deeds except those made after the passage of the act. We cannot with any sort of propriety assume that the Legislature either intended to enact unconstitutional legislation or that the Legislature was grossly ignorant of constitutional provisions. In adding the two new grounds for attacking tax deeds, the Legislature must have had in mind only tax deeds thereafter to be made. And, if so, I can find no reason for assuming a sudden change of intent to make the immediately following proviso applicable to both future and prior tax deeds. Reading the statute and its title as a whole, it seems reasonably clear that the minds of the law makers were fixed on tax deeds *thereafter* to be made. To construe the proviso as applying to tax deeds recorded before the passage of the act, we must add to the words, 'within two years after the same is duly admitted to record,' the words, 'or within two years after the passage of this act.' It is only where there is real doubt as to the legislative intent that the courts are authorized to thus construe into a statute words not put there by the Legislature. If the proviso was an act of Legislature standing alone and uncoupled with what precedes it, the doctrine of Sohn v. Waterson, supra, might possibly be applied. But the act here so clearly indicates that tax deeds to be made in the future are alone in contemplation, that I do not feel at liberty to construe the statute as applying to a tax deed which had been recorded before the statute was enacted. In Sohn v. Waterson, supra, it is said: 'A statute of limitations may undoubtedly have effect upon actions which have already accrued as well as upon actions which accrue after its passage. Whether it does so or not *depends upon the language of the act*, and the *apparent intent* of the Legislature to be gathered *therefrom*.' Page 599 of 17 Wall. As gathered from the language of the act of 1900, the intent to make the limitation apply only in favor of tax deeds to be thereafter made seems to me to be rather clear. It should also be said that two nisi prius Virginia courts have *seemingly* adopted this view (Mathews v. Glenn, 9 Va. Law Register, 546; Glenn v. Murphy, 11 Va. Law Reg. 37, 39), and an appeal was refused in the former case. That suit was necessarily instituted after June 12, 1902 (the date of the decree in the Court of Appeals in Mathews v. Glenn, 100 Va. 352 [41 S. E. 735]), and hence more than two years after the date of the act of March 7, 1900. It is true that we do not know that the present contention of the defendants at bar was considered by either Judge Grinnan, Judge Ingram, or by the Court of Appeals. But such contention *may* have been considered, especially by the Court of Appeals. The only conclusion I can reach that is satisfactory

to myself is that the two-year limitation in the act of 1900 does not apply in the case at bar.

"(3) The very recent case of Coles v. Jamerson [112 Va. 311], 71 S. E. 618, does not seem to afford reason for holding that the tax deed at bar does not sufficiently set forth all the circumstances relating to the sale. In that case the tax title was acquired at a *treasurer's sale* held under section 638, Code 1904. In such cases it is perfectly clear that the treasurer's report and the order of confirmation are circumstances in relation to *the sale*. But where, as in the case at bar, *'the sale'* was made *by the clerk,* years after the treasurer's sale to the commonwealth, I find in Coles v. Jamerson nothing which overrules Flanagan v. Grimmet, 51 Va. 421, 436. In the act of 1898 the intent is manifest, and it would pervert the meaning of the statute to require in the tax deed any circumstances not relating to the clerk's sale.

"(4) School Board v. Patterson, 111 Va. 482 [69 S. E. 337]. In view of the conclusion reached it is unnecessary to consider whether or not this decision should be followed. I shall for present purposes assume that it should be followed in like cases. But the question remains as to its application to the case at bar.

"The resignation of Sargeant in 1891 and the appointment of Torpin as his successor were certainly not such 'conveyances' as are contemplated by section 459, Code 1887. A resignation of a trustee is in no possible sense a 'conveyance,' and an appointment is no more a conveyance than would be a decree substituting one trustee in lieu of another. The deed of trust of 1887 was from J. D. Sargeant and others to J. D. Sargeant, Lewis Rodman and Thomas Graham, Trustees. If this conveyance had been listed by the clerk and the land transferred on the land book, the assessment would, unquestionably, following the universal practice of the commissioners of the revenue, have been in the name of 'J. D. Sargeant et al., Trustees.' We have therefore no difference between the assessment that was made and the assessment that should have been made except that between 'J. D. Sargeant' and 'J. D. Sargeant et al., Trustees.' To hold therefore that the case at bar falls under School Board v. Patterson, I must overrule Stevenson v. Henkle, 100 Va. 591 [42 S. E. 671]. This last-named case is so identical in principle with the case at bar that I think it is controlling. And in the case at bar the trustees had actual notice of the sale to the commonwealth and of Dotson's application to purchase, *and declined to redeem.*

"The only conclusion I can satisfactorily reach is to enter judgment in accordance with the verdict."

We find no error.
Affirmed.