# Richmond.

## School Board of Stonewall District, Rockingham County v. Patterson and Miller.

### November 17, 1910.

### Absent, Cardwell, J.

1. STATUTES—*Construction—Harsh Results.*—If the intent of a statute be plain, and it be free from constitutional objection, courts have no choice but to enforce it. But where a construction leads to harsh and inequitable consequences, courts look narrowly to the language of the statute to see whether or not any other interpretation will satisfy its terms.

2. STATUTES—*Construction—Former Law—Statutes in Pari Materia.*—When the legislature comes to pass a new law or to amend an old one, it is presumed to act with a full knowledge of the law as it stands, bearing upon the subject with which it proposes to deal; and courts, in the construction of statutes, look to all statutes *in pari materia* in order to get at the legislative intent, and as far as they properly can to mould the law into a harmonious and symmetrical whole.

3. TAX DEEDS—*Title of Purchaser—Delinquent in Name of Former Owner.*—When land is sold and conveyed to a purchaser and the deed is duly recorded, it is the duty of the clerk to include it in the list required to be made out by him by section 459 of the Code and to deliver a copy of the list to the proper commissioner of the revenue, whose duty it is to transfer the land on his books to the purchaser. (Code, sec. 461.) If these officers neglect their duties and the land is not transferred, but continues to stand on the books in the name of the former owner, and is returned in his name as delinquent for taxes for a year when it should have stood on the books of the commissioner in the name of the purchaser, and is sold for taxes, the purchaser at such sale acquires no title. The land could not be sold as delinquent under such circumstances.

4. TAX DEED—*Title of Purchaser—Land Returned Delinquent in Name of Former Owner—Act of February 23, 1906.*—Where land was conveyed to a purchaser in 1891 who recorded his deed in

1892, but the land remained on the land books in the name of the grantor, it could not properly be returned in the name of the grantor as delinquent for taxes for the year 1894, and if so returned and sold for taxes for 1894, the purchaser at the sale does not take the title of the grantee in the deed of 1891 under the act of February 23, 1906, declaring that the title acquired by the purchaser at such sale shall be such as "was vested in the party assessed with the taxes and levies thereon at the commencement of the year, for which the taxes or levies were assessed, for which it was sold, or any person claiming under such party."

Appeal from a decree of the Circuit Court of Rockingham county. Decree for the defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*Conrad & Conrad*, for the appellant.

*D. O. Dechert*, for the appellees.

KEITH, P., delivered the opinion of the court.

This case involves the title to lot No. 4, of block 63, of the town of Shendun, which was conveyed to the School Board of Stonewall District, Rockingham county, by H. M. Bell and wife, by deed dated September 15, 1908. Bell derived his title under a deed from the Grottoes Company, dated October 16, 1891, and recorded May 7, 1892.

This lot remained upon the assessment books in the name of the Grottoes Company, and was assessed for taxes for the year 1894, and subsequently sold and purchased by the Commonwealth. It thus appears that the lot was assessed in the name of the Grottoes Company, returned delinquent for nonpayment of taxes for 1894, and purchased by the Commonwealth, while H. M. Bell was the true owner under a duly recorded deed. William C. Patterson and Minnie A. Miller,

the defendants in error, became purchasers of this lot at a sale made January 21, 1907, under an act approved February 23, 1906, (Acts, 1906, p. 41), entitled "An act to authorize the sale of lots purchased by the Commonwealth for delinquent taxes and not redeemed within four years or more."

Under the law as it stood when *Gates* v. *Lawson*, 32 Gratt. 12, was decided, the purchaser at a tax sale took such estate "as was vested in the person assessed with the taxes at the commencement of the year, for which said taxes were assessed, and, therefore, when the person assessed with the tax had parted with his estate in the land by conveyance prior to the commencement of the year for which said taxes were assessed, no title passed to the purchaser at the tax sale." By the Code of 1887, an amendment was made (section 661), so that at the time of the sale of the lot in controversy, to the Commonwealth, the right or title acquired by the purchaser was such as "was vested in the party assessed with the taxes or levies on account whereof the sale was made, at the commencement of the year for which said taxes or levies were assessed, or in any person claiming under such party." This language is followed in section 12, of the act approved February 23, 1906, which provides, that "When the purchaser of any real estate so sold, his heirs or assigns, has obtained a deed therefor, and the same has been duly admitted to record in the county or corporation in which such real estate lies, the right or title to such estate shall stand vested in the grantee in such deed as it was vested in the party assessed with the taxes and levies thereon at the commencement of the year, for which the taxes or levies were assessed, for which it was sold, or any person claiming under such party, subject to be defeated only by proof that the taxes or levies for which said real estate was sold to the Commonwealth were not properly chargeable thereon, or that the taxes and levies properly chargeable on such real estate have been paid."

The only question which need be considered is whether or

not the land could be sold as delinquent, for a tax assessed against the Grottoes Company after it had parted with its title and passed it to a purchaser who caused it to be duly recorded.

If such be the law, it is by force of the words introduced into the statute after the decision of *Gates* v. *Lawson*, *supra*, which provides that the title acquired by a purchaser under a tax sale is such as was vested in the party assessed with the taxes at the commencement of the year, for which the taxes were assessed for which it was sold, "or any person claiming under such party."

By sections 459, 460 and 461, it is provided, that "The clerk of every circuit or city court shall annually, on or before the fifteenth of January, make out a list of all deeds for the partition or conveyance of land * * * * which have been admitted to record in the clerk's office of such court within a year ending on the thirty-first day of December, next preceding, which first-mentioned list shall state the date of the deed, when admitted to record, the names of grantors and grantees, the quantity of land conveyed, the specific value thereof, and a description of the same; * * * *" and (by section 461) that every such list shall "immediately after the fifteenth day of January, be transmitted to the Auditor of Public Accounts, and a copy thereof delivered by the clerk to the commissioner for his county or corporation. * * * *." And by section 455 it is provided that "The Commissioner for each district in the several counties, and the commissioner for each city, shall commence, annually, on the first day of February, or at such time as the Auditor shall designate, and proceed without delay, to ascertain all the real estate in his county, district, or city, as the case may be, and the person to whom the same is chargeable with taxes on that day."

By section 634, it is provided, that "Any person owning or claiming real estate in this State, shall, if the same be not already there, cause it to be entered on the land books of the

·county or city in which such real estate is situated. Where the land lies partly in one county and partly in another, or in more counties than one, the owner or claimant in making such entry in the land book, shall be governed by the provisions of sections four hundred and seventy-six, and four hundred and seventy-seven."

And by section 635: "If such owner or claimant shall neglect to enter his real estate, as provided in the preceding section, for a period of five years after notice in writing by a commissioner authorized to assess the same, such real estate shall be absolutely forfeited to the Commonwealth, and be liable to entry and survey as waste and unappropriated lands under chapter one hundred and four."

It was plainly the duty of the clerk to notify the assessor of Rockingham county that the Grottoes Company had parted with its title, which was duly recorded, and could no longer be properly assessed with taxes upon lot No. 4. It was also plainly the duty of the assessor, when he had been thus notified, to correct the books of assessment. But it is urged that it is the duty of every land owner to report the lands owned by him to the assessor for taxation, and that if he fails in that duty he must answer for the consequences; that H. M. Bell, having acquired title to lot No. 4, the duty was imposed upon him to see that lot No. 4 was properly assessed and that the taxes upon it were paid. The legislature recognizing that duty has provided in sections 634 and 635 a very severe penalty for failure to perform it.

We express no opinion as to the constitutionality of those sections. It has been sometimes suggested that they were repugnant to the Fourteenth Amendment of the Constitution of the United States as depriving the owner of his property without due process of law. But however that may be it is the penalty which the legislature has seen fit to impose upon those land owners who fail to cause their lands to be entered

on the books of the county or city in which such real estate
is situated.

We do not think it necessary in this case to go into a recon-
sideration of the question of how far the legislature can con-
stitutionally make the tax deed conclusive. If the language
of the statute compels the construction placed upon it by the
circuit court, then it is a harsh and inequitable law.    It
would be arbitrary in the extreme to say that a landowner
who fails to report for taxation any parcel of real estate of
which he was the owner is guilty of such negligence, or of
such wrongful intent, as would justify the legislature in vis-
iting him with the consequences which attach to a delinquent
taxpayer. Not only would such a construction be harsh, but
it would be impolitic as well. It would increase the difficul-
ties, already sufficiently great, which surround the investiga-
tion of titles in this State. As was said in the petition for a
writ of error in this case, no attorney or purchaser of land,
in making examination of titles, could reasonably be expected
to look into the delinquent tax records for 1894 to ascertain
whether in that year land had been returned delinquent in
the name of a grantor whose deed of conveyance for the land
had been recorded two or more years prior thereto. A pur-
chaser of land would be justified in presuming that the offi-
cer of the State had discharged the duty required of him,
of having made the proper transfer on the land books, and
that, therefore, after the year in which a deed was recorded
the land would, if delinquent, be returned delinquent in the
name of the grantee in such deed. If, however, such be the
plain intent of the statute, and it be free from constitutional
objection, the courts have no choice but to enforce it. But
where a construction leads to such consequences, we should
look narrowly to the language of the law to see whether or
not any other interpretation will satisfy its terms.

The legislature, when it comes to pass a new law, or to
amend an old one, is presumed to act with a full knowledge

of the law as it stands, bearing upon the subject with which it proposes to deal; and courts, in the construction of statutes, look to all statutes *in pari materia* in order to get at the legislative intent and as far as they properly can to mould the law into a harmonious and symmetrical whole.

When the legislature came to amend the law as to the sale of lands for delinquent taxes, in order to meet the difficulty disclosed by *Gates* v. *Lawson, supra,* it found that the right or title acquired by a purchaser at a tax sale was such as was vested in the party assessed with the taxes or levies on account whereof the sale was made at the commencement of the year for which said taxes or levies were assessed, and if thereafter the taxpayer parted with his right or title, the purchaser at the tax sale acquired no interest. It, therefore, to meet this difficulty, added the words "or in any person claiming under such party." In making that addition the legislature must have had in mind that the law as it existed made it the duty of the clerk to inform the assessor as to any transfer of title that had taken place, as shown by the records in his office, on or before the 15th of January of each year, and that it was the duty of the commissioner of the revenue to correct his land books in accordance therewith. If, then, the clerk and the commissioner discharged the duties imposed upon them, the situation presented, in this record could not have arisen; and the legislature cannot be presumed to have introduced the amendment to the law under consideration in order to meet and apply to a contingency which, in contemplation of law, could not arise. The language of the statute under consideration is satisfied, and the object contemplated by the legislature is achieved, by making it apply to and operate upon a state of facts which might arise although the various officers faithfully perform the duties with which they were charged by law.

It will be observed that under the facts of this case the Grottoes Company parted with its title by deed dated Octo-

ber 16, 1891, which was recorded May 7, 1892. The taxes for the year 1893 were paid by some one—at least, there is no evidence of any delinquency for that year. Were they paid by the Grottoes Company, or by the purchaser from the Grottoes Company, H. M. Bell? In 1894 the taxes were charged against the land in the hands of the Grottoes Company. If it could be done for one year, the process might have been repeated for a series of years. If the Grottoes Company had been delinquent for taxes in 1891, the land so delinquent might with propriety have been sold for the taxes and purchased by the Commonwealth, and subsequently it might have passed under proceedings identical with those that took place in this case under a deed from the clerk, under the act of 1896, and in that case the purchasers, the defendants in error here, would have taken such title as was in the Grottoes Company at the beginning of the year 1891, although since that time its title had passed to and vested in H. M. Bell, and the language of the statute would have been satisfied and no wrong or injustice done to anyone, because it would have been the duty of Bell, when he purchased from the Grottoes Company, to have satisfied himself that the taxes had been paid up to the time of his purchase.

Without undertaking to generalize, therefore, upon the subject, but confining ourselves to the facts of the case in judgment, we are of opinion that the title which was vested in Bell by virtue of his deed from the Grottoes Company did not pass to the Commonwealth under its purchase at the tax sale in 1895, and, therefore, is not now vested in the appellees by virtue of the deed from the clerk of the Circuit Court of Rockingham county.

We are, therefore, of opinion that the decree of the circuit court must be reversed, and this court will enter a decree in accordance with the views expressed herein.

*Reversed.*