COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Petty
Argued at Richmond, Virginia

DELACY DEON HUNTER
                                                          OPINION BY
v.      Record No. 2989-08-2                      JUDGE WILLIAM G. PETTY
                                                         MARCH 30, 2010
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                             David H. Beck, Judge

            Ronald J. Hur, Assistant Public Defender (Sarah Abernathy,
            Assistant Public Defender; Office of the Public Defender, on brief),
            for appellant.

            John W. Blanton, Assistant Attorney General (William C. Mims,
            Attorney General, on brief), for appellee.


        On September 17, 2008, Delacy Deon Hunter, appellant, was convicted of possession of

a Schedule I controlled substance in violation of Code § 18.2-250, possession of a controlled

substance while simultaneously in possession of a firearm on or about his person in violation of

Code § 18.2-308.4(B), and carrying a concealed weapon in violation of Code § 18.2-308(A).  On

appeal, Hunter argues that the evidence was insufficient to prove that (1) he possessed a firearm

on or about his person under Code § 18.2-308.4(B) and (2) he carried a concealed weapon about

his person under Code § 18.2-308(A).[1]  For the following reasons, we reverse Hunter's

conviction under Code § 18.2-308.4(B) but we remand the case to the trial court for a new trial

on the lesser-included offense under Code § 18.2-308.4(A), see Britt v. Commonwealth, 276 Va.

---

        [1] In his petition for appeal, Hunter also argued that the evidence was insufficient to prove
that he possessed the controlled substance.  We did not grant his petition as to that issue.

569, 576, 667 S.E.2d 763, 766-67 (2008), and we reverse and dismiss Hunter's conviction under Code § 18.2-308(A).

## I. BACKGROUND

On April 10, 2008, Delacy Hunter was one of two passengers in a car driven by Rodney Quinn. Hunter sat in the front passenger seat, and the other passenger sat in the back seat. Deputy T.D. Onderko, of the Spotsylvania Sheriff's Department, stopped the car because it did not have "tag lights." Deputy Onderko asked Quinn if he could search the car, and Quinn consented.

The driver and the two passengers got out of the car and went behind the car to wait while Deputy Onderko performed his search. When they were walking to the back of the car, Hunter asked Quinn what he was doing. Quinn responded, "Don't worry, it's locked. The box is locked. I have the keys." Sometime before walking behind the car, Hunter walked toward the front of the car, stopped, and walked to the back of the car.

After performing a search of the car, Deputy Onderko discovered a bag of marijuana under the driver floor mat. Deputy Onderko attempted to search the glove compartment directly in front of the front passenger seat but the compartment was locked. Deputy Onderko asked Quinn for the key to unlock the glove compartment, and when Quinn refused,[2] Onderko arrested Quinn for possession of marijuana, obtained the keys for the glove compartment, and searched it.

After finding a handgun in the glove compartment, Deputy Onderko placed the two passengers in handcuffs and read them their Miranda rights. Hunter stated that "the firearm was his and he was going to take the charge."

Deputy Onderko continued his search of the vehicle and, on top of the front passenger tire he found a bottle of Motrin that contained twelve pills that looked like ecstasy. Onderko

---

[2] Specifically, Quinn said, "No, you can't search the glove box without a search warrant."

testified that Hunter was the only person to walk to the front of the car, stop, and walk back. A video of the traffic stop, which the Commonwealth introduced into evidence, supported this statement. The certificate of analysis produced by the Department of Forensic Science confirmed that some of the pills were ecstasy. While at the magistrate's office, Hunter told Deputy Onderko that he "bought the gun and ecstasy in North Carolina [and that he] paid eighty bucks for the gun." Hunter referred to the pills in the Motrin bottle as "X."

At trial, Hunter made a motion to strike the Commonwealth's evidence arguing that the evidence was insufficient to support convictions for possession of the firearm or possession of a firearm while in possession of a controlled substance. The trial court denied Hunter's motion to strike and convicted him of all three charges. This appeal followed.

## II. ANALYSIS

Hunter contends on appeal that the evidence was insufficient to prove beyond a reasonable doubt (1) that he possessed a controlled substance and simultaneously with knowledge and intent possessed a firearm on or about his person in violation of Code § 18.2-308.4(B) and (2) that he carried a concealed firearm about his person in violation of Code § 18.2-308(A). When considering the sufficiency of the evidence below, "we grant the judgment of the trial court sitting without a jury the same weight as a jury verdict and will not disturb that judgment on appeal unless it is plainly wrong or without evidence to support it." Ellis v. Commonwealth, 29 Va. App. 548, 554-55, 513 S.E.2d 453, 456 (1999) (citing Myrick v. Commonwealth, 13 Va. App. 333, 339, 412 S.E.2d 176, 179 (1991)). For the following reasons, we reverse Hunter's convictions.

A. Possession of a Firearm while in Possession of Certain Controlled Substances

In 2003, our General Assembly amended Code § 18.2-308.4 by adding subsection (B). The statute now requires that the accused knowingly and intentionally possess the firearm "on or

about his person" while simultaneously in possession of a controlled substance. Hunter argues that the phrase "on or about his person" requires the Commonwealth to prove actual possession of the firearm. The Commonwealth disagrees and argues that the legislature clearly intended to authorize a heightened penalty for a defendant who either actually *or* constructively possesses a firearm that is readily accessible for prompt and immediate use. Hunter argues in the alternative that even if the statute is construed to apply to the constructive possession of a firearm, there was no evidence presented that proved the firearm was readily accessible for prompt and immediate use and thus "on or about his person."

"Under principles of statutory construction, we must consider the ordinary and plain meaning of statutory terms." Winborne v. Virginia State Lottery, 278 Va. 142, 148, 677 S.E.2d 304, 306 (2009). When interpreting a statute, our objective is to interpret the statute "in accordance with the intent of the legislature." Id. (citing Virginia Cellular LLC v. Virginia Dep't of Taxation, 276 Va. 486, 490, 666 S.E.2d 374, 376 (2008)). We typically deduce the intent of the legislature "'from the words contained in the statute.'" Baker v. Commonwealth, 278 Va. 656, 660, 685 S.E.2d 661, 663 (2009) (quoting Elliott v. Commonwealth, 277 Va. 457, 463, 675 S.E.2d 178, 182 (2009)). "Additionally, '[i]n accordance with principles of statutory construction of penal statutes, a court must not add to the words of the statute nor ignore the words of the statute and must strictly construe the statute and limit its application to cases falling clearly within the statute.'" Id. at 660-61, 685 S.E.2d at 663 (quoting Farrakhan v. Commonwealth, 273 Va. 177, 181-82, 639 S.E.2d 227, 230 (2007)). This means that we must construe the statute "strictly against the State and favorably to the liberty of the citizen" so as to ensure that "[n]o man incurs a penalty unless the act which subjects him to it is clearly within the spirit and letter of the statute which imposes such penalty." Sutherland v. Commonwealth, 109 Va. 834, 835, 65 S.E. 15, 15 (1909).

Code § 18.2-308.4 has been amended since we first addressed the type of possession required in Jefferson v. Commonwealth, 14 Va. App. 77, 414 S.E.2d 860 (1992). Prior to 2003, the pertinent portion of the statute simply prohibited any possession of a firearm while in simultaneous possession of a Schedule I or II controlled substance. In 2003, the General Assembly amended the statute to carve out a new offense. Now, subsection (A) prohibits the possession of a firearm while in simultaneous possession of certain controlled substances. Subsection (B), which imposes a mandatory two-year sentence, makes it illegal for any person who is unlawfully in possession of a controlled substance "to simultaneously with knowledge and intent possess any firearm *on or about his person*." (Emphasis added). Subsection (C), which was not changed by the 2003 amendment, prohibits the simultaneous possession of a firearm while in possession of a controlled substance with the intent to distribute it. Wright v. Commonwealth, 278 Va. 754, 759, 685 S.E.2d 655, 657 (2009). "There can be no dispute that the purpose of the legislation was to establish three categories of crimes relating to the possession of controlled substances and firearms at the same time." Id. The only dispute here is whether the elements required by subsection (B) have been proven.

1. The Element of Possession of a Firearm

Subsection (B) begins by prohibiting the possession of a firearm in certain circumstances. Where the General Assembly uses the word "possess," Virginia courts have typically held that proof of actual or constructive possession are both permissible. Smallwood v. Commonwealth, 278 Va. 625, 630, 688 S.E.2d 154, 156 (2009); Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). Indeed our Supreme Court has stated that "[a] well-settled principle of our jurisprudence is that a conviction for unlawful possession of a firearm or controlled substance may be based solely on evidence of constructive possession." Wright, 278 Va. at 759, 685 S.E.2d at 657 (citing Rawls v. Commonwealth, 272 Va. 334, 349-50, 634 S.E.2d 697, 705

(2006) (constructive possession of firearm); Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 872 (1998) (constructive possession of drugs); Ritter v. Commonwealth, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970) (constructive possession of drugs)).

In 1992, we interpreted the 1987 version of Code § 18.2-308.4 and held that constructive possession of either the controlled substance or the firearm, or both, was sufficient to support a conviction. Jefferson, 14 Va. App. at 80, 414 S.E.2d at 862. That conclusion did not change with the amendments in 1992, 1993, or 1999. See Wright v. Commonwealth, 53 Va. App. 266, 277, 670 S.E.2d 772, 777, aff'd, 278 Va. 754, 685 S.E.2d 655 (2009). Nor do we believe that it has changed with the 2003 or 2004 amendments.[3] Unless the language in the statute "alters or suggests an intent to alter this principle," we are bound to read the statute in light of the abundance of authority supporting that principle. Wright, 278 Va. at 759, 685 S.E.2d at 657. Thus, we conclude that by using the word "possess" in Code § 18.2-308.4(B), the General Assembly intended to proscribe either actual or constructive possession of the firearm.

The Attorney General argues that Hunter was in actual possession of the firearm, citing the trial court's finding that "[Hunter] made the actual statements of purchase of the gun and the substance which he described as X in North Carolina for eighty dollars, evidencing his actual possession simultaneously with the drugs that he possessed, on or about April 10, 2008." We disagree. Even recognizing that actual possession may be proven by "circumstantial evidence, direct evidence, or both," Byers v. Commonwealth, 23 Va. App. 146, 150, 474 S.E.2d 852, 854 (1996), at no point during the trial did the Commonwealth offer any direct evidence that Hunter

---

[3] While we conclude that the statute permits a conviction based on constructive possession, we note here that, as discussed below, the Commonwealth must also prove that the weapon was "about his person." We discuss constructive possession and "about his person" separately because they are two distinct legal concepts that require the Commonwealth to meet different standards. Code § 18.2-308.4(B) prohibits those circumstances where both standards are met.

- 6 -

actually possessed the firearm in Virginia. The facts here simply establish that Hunter purchased the firearm on an unknown date in North Carolina, and somehow it was placed in the glove compartment of Quinn's car. While these are circumstances that may create a suspicion of actual possession, ownership of a firearm and proximity standing alone are not sufficient to prove actual possession. Further, even though Hunter knew that the firearm was in the glove compartment, that fact does not establish that he put it there. Thus, the evidence was insufficient to prove that Hunter actually possessed the firearm. See Hancock v. Commonwealth, 21 Va. App. 466, 468, 465 S.E.2d 138, 140 (1995) (holding that the defendant did not actually possess a firearm found on the floorboard at his feet).

While the evidence was insufficient to prove actual possession, the facts do support the conclusion that Hunter constructively possessed the firearm.

> To support a conviction based upon constructive possession, the Commonwealth "must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control."

Jefferson, 14 Va. App. at 80, 414 S.E.2d at 862 (quoting Brown v. Commonwealth, 5 Va. App. 489, 491-92, 364 S.E.2d 773, 774 (1988)); accord Wright, 278 Va. at 759, 685 S.E.2d at 657; Bolden, 275 Va. at 148, 654 S.E.2d at 586. "'Possession and not ownership is the vital issue. Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly.'" Smallwood, 278 Va. at 631, 688 S.E.2d at 157 (quoting Burnette v. Commonwealth, 194 Va. 785, 792, 75 S.E.2d 482, 487 (1953)). "Although mere proximity to the contraband is insufficient to establish possession, it is a factor that may be considered in determining whether a defendant possessed the contraband." Byers v. Commonwealth, 37 Va. App. 174, 180, 554 S.E.2d 714, 716 (2001). Additionally,

"[o]wnership or occupancy of the premises on which the contraband was found is likewise a circumstance probative of possession." Id.

Hunter was the passenger in the front seat of Quinn's car. The glove compartment, which contained the firearm, was directly in front of Hunter. After Onderko stopped the car and Quinn consented to Onderko's search of the vehicle, Hunter asked Quinn what he was doing. Quinn responded, "Don't worry, it's locked. The box is locked. I have the keys." Hunter's concern that Quinn had consented to the search and that Onderko would find the firearm upon inspection of the glove compartment indicates that Hunter knew the firearm was there. Further, Hunter clearly claimed ownership of the firearm stating that he was going to "take the charge" for the firearm and that he bought it in North Carolina. While Hunter's ownership of the firearm does not prove actual possession, it indicates that had he wanted to actually possess it, he could have.[4] Thus, this evidence supports the inference that Hunter knew of the presence and the character of the firearm inside the glove box. The fact that Quinn also exercised dominion and control by locking the glove box simply establishes that he was in joint constructive possession of the weapon.[5] Thus, we conclude that the evidence was sufficient to prove that Hunter constructively possessed the firearm.[6] See Hagy v. Commonwealth, 35 Va. App. 152, 159, 543 S.E.2d 614, 617 (2001).

---

[4] Some courts have defined dominion and control to mean "the ability to reduce an object to actual possession." United States v. Jenkins, 90 F.3d 814, 822 (3rd Cir. 1996); United States v. Swinney, 970 F.2d 494, 497 (8th Cir. 1992); United States v. Martinez, 588 F.2d 495, 498 (5th Cir. 1979); United States v. Massey, 687 F.2d 1348, 1354 (10th Cir. 1982); State v. Ross, 49 S.W.3d 833, 845-46 (Tenn. 2001).

[5] There is no evidence of when Quinn locked the glove box. However, the combination of these facts gives rise to the inference that both men exercised some dominion and control over the gun inside the locked glove compartment.

[6] If appellant were correct that he was not in possession of the firearm, we would dismiss this indictment rather than remanding for a new trial. Thus, this issue is germane to our conclusion.

2.  The Element of Possession of a Firearm "On or About the Person"

Even though Hunter constructively possessed the firearm, we recognize that the General Assembly, by adding the language "on or about his person" intended "to require something more than constructive possession" of the firearm in subsection (B).  Wright, 53 Va. App. at 280, 670 S.E.2d at 779.  Yet both this Court and our Supreme Court left open the question of how much more is required.  Today, we consider that question.

Both subsections (A) and (B) of the statute require the Commonwealth to prove that the accused possessed a controlled substance and simultaneously with knowledge and intent possessed a firearm.  The only difference between subsection (A) and (B) is that, under subsection (B), the possession of the firearm must be "on or about [the accused's] person."  In addition, while both subsections are Class 6 felonies, subsection (B) carries a mandatory minimum sentence of two years.  The statute further makes clear that subsection (B) "constitutes a separate and distinct felony . . . ."  Hunter contends that by adding the phrase "on or about his person" to subsection (B), the General Assembly intended to punish only the actual possession of a firearm.  We disagree.

Clearly, Code §§ 18.2-308.4(B) and 18.2-308(A) both use the same language by prohibiting any person from possessing or carrying, respectively, a firearm "on or about his person."  As detailed below, the phrase "about the person" carries with it over a century of jurisprudence.  When interpreting language in a statute, we often apply the "common canon of statutory construction that when the legislature uses the same term in separate statutes, that term has the same meaning in each unless the General Assembly indicates to the contrary."  Commonwealth v. Jackson, 276 Va. 184, 194, 661 S.E.2d 810, 814 (2008) (citing Virginia Elec. & Power Co. v. Bd. of Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983)).  Further, "[w]hen the legislature . . . pass[es] a new law or . . . amend[s] an old one, it is presumed to act

with full knowledge of the law as it stands bearing upon the subject with which it proposes to deal." Sch. Bd. of Stonewall Dist. v. Patterson, 111 Va. 482, 487-88, 69 S.E. 337, 339 (1910). In addition, in construing the plain language of the statute, we must "look to all statutes *in pari materia* in order to get at the legislative intent and as far as [we] properly can to mould the law into a harmonious and symmetrical whole." Id. at 488, 69 S.E. at 339.

While we recognize that "Code § 18.2-308.4 is not an extension of the Concealed Weapons Statute," Jefferson, 14 Va. App. at 80, 414 S.E.2d at 861-62, we also recognize that, for the last century, the phrase "about his person" has maintained the same particular meaning. Thus, by inserting "on or about his person" into the language of Code § 18.2-308.4(B), we conclude that the General Assembly also intended to include our jurisprudence associated with that phrase.

Since 1909, our Supreme Court has maintained that for a firearm to be "about the person" it must be "so connected with the person as to be readily accessible for use or surprise if desired." Sutherland, 109 Va. at 835, 65 S.E. at 15; accord Schaaf v. Commonwealth, 220 Va. 429, 431, 258 S.E.2d 574, 575 (1979); Pruitt v. Commonwealth, 274 Va. 382, 387-88, 650 S.E.2d 684, 686 (2007). This Court has applied the same standard. Leith v. Commonwealth, 17 Va. App. 620, 622, 440 S.E.2d 152, 153 (1994); Watson v. Commonwealth, 17 Va. App. 124, 126, 435 S.E.2d 428, 429 (1993).

In Sutherland, our Supreme Court held that a pistol concealed in a saddlebag and carried by the defendant was not "about his person" as required by the statute. Sutherland, 109 Va. at 835, 65 S.E. at 15. Some seventy years later, the Supreme Court "distinguish[ed] and narrow[ed]," Pruitt, 274 Va. at 388, 650 S.E.2d at 686, its holding in Sutherland by ruling that a firearm concealed in a purse and carried by the defendant was "about her person" as required by the statute. Schaaf, 220 Va. at 431-32, 258 S.E.2d at 575. The Court reasoned that "a handbag

- 10 -

was usually carried closer to the defendant's person than was a saddlebag and was of a character that its contents were more readily accessible." Pruitt, 274 Va. at 388, 650 S.E.2d at 686.  In contrast, the Supreme Court recently held that a firearm, placed in an unlocked car console, was not about the defendant's person because the defendant was not in the car and thus did not have "prompt and immediate use" of the weapon.  Id. at 388, 650 S.E.2d at 687.

This Court has applied the standards established in Sutherland and Schaaf on several occasions in deciding whether a firearm was "about the person" when it was not actually carried on the person.  In Leith, for instance, this Court considered whether a firearm locked in a console of the defendant's vehicle was about the driver's person.  17 Va. App. at 623, 440 S.E.2d at 154. We concluded that because Leith had the key to the locked console he had direct and immediate access to the weapon and, therefore, it was about his person.  Id.  Further, this Court has held that a firearm that was located underneath the driver's side floormat was about the driver's person because it was readily accessible to the driver "without much difficulty" and "with only the slightest movement."  Watson, 17 Va. App. at 127, 435 S.E.2d at 430; but see Sutherland, 109 Va. at 836; 65 S.E. at 15 ("Evidence that the defendant had a pistol concealed under a rug in the bottom of the buggy in which he was riding was held not to be sufficient to convict him of carrying a pistol concealed about his person." (citing Ladd v. State, 9 So. 401 (Ala. 1890))).

The purpose of the concealed weapons statute is "'to interdict the practice of carrying a deadly weapon about the person, concealed, and yet so accessible as to afford prompt and immediate use.'"  Schaaf, 220 Va. at 430, 258 S.E.2d at 574-75 (quoting Sutherland, 109 Va. at 835, 65 S.E. at 15).  Thus, to serve that purpose, the only possible meaning for the phrase "about his person" must be that the firearm is "so connected with the person as to be readily accessible for use or surprise if desired."  Sutherland, 109 Va. at 835, 65 S.E. at 15.  "Judicial use of the term 'readily' simply recognizes that the availability contemplated by the statute means 'in a

ready manner' or 'without much difficulty.'" Watson, 17 Va. App. at 127, 435 S.E.2d at 430

(citing Webster's Ninth New Collegiate Dictionary 980 (1989)). Like the Court in Watson, we

have no doubt that the accessibility discussed in Sutherland and Schaaf depends significantly on

the location of the weapon in relation to the accused. Id.

Contrary to Hunter's argument, the phrase "about his person" has never *required* actual

possession. See Pruitt, 274 Va. 382, 650 S.E.2d 684; Schaaf, 220 Va. 429, 258 S.E.2d 574;

Sutherland, 109 Va. 834, 65 S.E. 15; Leith, 17 Va. App. 620, 440 S.E.2d 152; Watson, 17

Va. App. 124, 435 S.E.2d 428; Jefferson, 14 Va. App. 77, 414 S.E.2d 860. Nevertheless, the

phrase clearly requires something in addition to mere constructive possession—that is, simple

knowledge, dominion, and control. Thus, the plain language of subsection (B) requires the

simultaneous actual or constructive possession of a controlled substance and actual or

constructive possession of a firearm on or about the person. In other words, the Commonwealth

must prove beyond a reasonable doubt that the defendant, who possessed certain controlled

substances, actually possessed the firearm "on . . . his person"; *or* that the defendant was aware

of both the presence and character of the firearm, that the firearm was within the accused's

dominion and control, and that the firearm was readily accessible for prompt and immediate use.

Here, Hunter did not have ready access to the firearm. The fact that the firearm is located

in a locked glove compartment is not dispositive to our decision; however, the fact that Hunter

did not have a key to the locked glove compartment is. In Leith, we reasoned that "Leith had

immediate and direct access to the weapon" because "the key to the console was on the same key

ring as the ignition key," which was in the ignition. Leith, 17 Va. App. at 623, 440 S.E.2d at

154. That fact supported the conclusion that "Leith had immediate access to the locked

compartment and, ultimately, the pistol." Id. Hunter, however, did not have the keys to the car,

nor did he have the key for the locked glove compartment. Thus, even viewing the facts in the

- 12 -

light most favorable to the Commonwealth and granting to it all reasonable inferences, we hold that the firearm was not so "accessible to [Hunter] so as to afford 'prompt and immediate use.'" Pruitt, 274 Va. at 389, 650 S.E.2d at 687.

We are persuaded that once the glove compartment was locked and Quinn kept the key, the firearm was not "'so connected with [Hunter's] person as to be readily accessible for use or surprise if desired.'" Schaaf, 220 Va. at 431, 258 S.E.2d at 575 (quoting Sutherland, 109 Va. at 835, 65 S.E. at 15). There was no evidence establishing when Quinn locked the glove compartment. Further, Hunter's ownership of the firearm has little relevance to his ability to access the firearm for prompt and immediate use. See Watson, 17 Va. App. at 127, 435 S.E.2d at 430 (stating that "the location of the weapon is a significant circumstance . . . in weighing accessibility"). Moreover, we are convinced that this case is more like Pruitt because there is no evidence that Hunter was so connected with the firearm "for any appreciable period of time" so as to make the firearm "so accessible . . . as to afford prompt and immediate use." Pruitt, 274 Va. at 388, 650 S.E.2d at 687. Thus, we conclude that the evidence was insufficient to prove beyond a reasonable doubt that Hunter was guilty of Code § 18.2-308.4(B).

## B. Carrying a Concealed Weapon

Code § 18.2-308(A) makes it unlawful for any person to "carr[y] about his person, hidden from common observation, (i) any pistol, revolver, or other weapon designed or intended to propel a missile of any kind by action of an explosion of any combustible material . . . ." Having already decided that the firearm was not about Hunter's person above, we conclude that the evidence was insufficient to prove that Hunter was guilty of Code § 18.2-308(A).

## III. CONCLUSION

For the foregoing reasons, we hold that the evidence was insufficient to prove that Hunter was guilty of (1) possession of a controlled substance while simultaneously possessing a firearm

about his person under Code § 18.2-308.4(B) and (2) carrying a concealed weapon under Code § 18.2-308(A).  Thus, we reverse and dismiss his conviction under Code § 18.2-308(A).  However, because the evidence is sufficient to establish a violation of Code § 18.2-308.4(A), we reverse and remand that conviction for retrial on the lesser-included offense if the Commonwealth be so advised.[7]

<u>Reversed and remanded, in part, and reversed and dismissed, in part.</u>

---

[7] Here, as in <u>Britt</u>, 276 Va. 569, 667 S.E.2d 763, neither party has consented to remanding the case for re-sentencing on the lesser-included offense.  Thus, we remand for a new trial.  We recognize that subsequent to <u>Britt</u>, our Supreme Court reversed a conviction and remanded the case for a new sentencing hearing on a lesser-included offense because "this disposition is consistent with Code § 19.2-185 . . . ."  <u>Waller v. Commonwealth</u>, 278 Va. 731, 738, 685 S.E.2d 48, 51 (2009).  While <u>Waller</u> did not address whether the parties consented to the re-sentencing, neither did it overrule the holding in <u>Britt</u>.  Thus, we believe that the consent of the parties continues to be a prerequisite to our remanding a case for re-sentencing on a lesser-included offense.