PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Malveaux and Senior Judge Frank
Argued at Hampton, Virginia

SAMUEL RUDOLPH JOSHUA RASPBERRY

OPINION BY
JUDGE ROBERT J. HUMPHREYS
OCTOBER 29, 2019

v.      Record No. 0988-18-1

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Ronald L. Smith (Smith Law Firm, PLC, on brief), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Following a bench trial, the Circuit Court for the City of Hampton ("circuit court") convicted appellant Samuel Rudolph Joshua Raspberry ("Raspberry") of two counts of possession with intent to distribute narcotics—cocaine and methamphetamine—both in violation of Code § 18.2-248; possession of a concealed weapon, in violation of Code § 18.2-308; possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2; and possession of a firearm while in possession of a controlled substance, with the intent to distribute, in violation of Code § 18.2-308.4.  This appeal follows in which Raspberry assigns error to the admission of court records regarding his prior criminal history and to the sufficiency of the evidence that he constructively possessed the two firearms found in the vehicle he was operating.

I.  BACKGROUND

On May 18, 2017, the Virginia State Police contacted Hampton Detective Juan Figueroa ("Detective Figueroa") about Raspberry because Raspberry had an outstanding capias.  Virginia State Police also informed Detective Figueroa that Raspberry would be present at a specific

address in Hampton, Virginia, later that same day. Detective Figueroa subsequently travelled to the location where he expected Raspberry to appear and set up surveillance. At that time, Detective Figueroa also possessed information that Raspberry would be driving a gray Ford Fusion with "Virginia tags."

At approximately 2:45 p.m., Officer Figueroa witnessed Raspberry parking a gray Ford Fusion. Detective Figueroa then pulled his vehicle behind Raspberry and identified himself. Detective Figueroa told Raspberry that Raspberry was under arrest and directed Raspberry to get out of the vehicle. After confirming Raspberry's identity, Detective Figueroa searched Raspberry incident to arrest. During the search of Raspberry's person, Detective Figueroa discovered a green Crown Royal bag in Raspberry's right pocket, which contained 12.65 grams of cocaine, "roughly $1,000" in $10 and $20 bills, a digital scale, and 45 MDMA (methamphetamine) pills. Detective Figueroa also discovered marijuana on Raspberry's person, for which Raspberry was not charged.

After searching Raspberry's person, Detective Figueroa searched a bag located on the front passenger seat of Raspberry's vehicle. The bag contained two firearms wrapped in a pair of jeans and two Gatorade bottles. The Gatorade bottles had condensation on the outside of the bottles. When Detective Figueroa opened the bag, he saw the jeans and the guns on top, with the Gatorade bottles underneath and at the bottom of the bag.

At Raspberry's trial, which took place on April 6, 2018, Detective Figueroa testified for the Commonwealth. After being qualified as an expert in narcotics distribution, Detective Figueroa testified that the quantity of drugs that Raspberry possessed, its packaging, the amount of money discovered, and Raspberry's possession of the digital scale were all inconsistent with personal use. Detective Figueroa also testified that the "street value" of the cocaine discovered on Raspberry's person was "about $1,400 worth." Further, Detective Figueroa indicated that

- 2 -

there was a "noticeable nexus between firearms and drugs" in the City of Hampton because "people . . . will protect their products or their merchandise and their currency with firearms." Detective Figueroa also agreed that a "large quantity of [drug] dealers carry firearms" on their person.

Raspberry's girlfriend, Miosa Henderson ("Henderson"), owned the gray Ford Fusion that Raspberry drove on the day of his arrest. At trial, Henderson testified that officers arrested Raspberry after Raspberry arrived to pick her up from work. Henderson also noted that Raspberry frequently drove her vehicle. She also testified that the bag discovered by Detective Figueroa on the front passenger seat of the vehicle did not belong to her and that she did not know who it belonged to.

At the beginning of the trial, the Commonwealth offered three certified orders from the Circuit Court for the City of Hampton indicating that Raspberry was a convicted felon.[1] Raspberry, however, objected to the admission of the court orders because they "were not signed by a judge."

Each of the three court orders indicated that Raspberry was previously convicted of a felony and contained electronic signatures from judges as opposed to physical signatures. The first court order introduced by the Commonwealth is titled "Revocation of Suspension of Sentence" order and dated December 19, 2014. The signature line reads "S/CHRISTOPHER W. HUTTON," and the word "JUDGE" appears below it. The second court order is also titled "Revocation of Suspension of Sentence" and dated April 24, 2009. The signature line reads "S/BONNIE L. JONES," with the word "JUDGE" below it. The third and final court order introduced by the Commonwealth is titled "Sentencing Order" and dated August 6, 2008. The

---

[1] After the circuit court overruled Raspberry's objection and admitted the prior court orders, the Commonwealth withdrew a fourth sentencing order from Isle of Wight County.

signature line reads "S/RANDOLPH T. WEST," with the word "JUDGE" below it. All were certified by the Hampton Circuit Court Clerk with an embossed seal containing the following language:

> I certify that the document to which this authentication is affixed is a true copy of an original record in the Hampton Circuit Court, that I have custody of the record and I am the custodian of that record.
>
> Linda Batchelor Smith, Clerk
>
> By [signature]
>
> Deputy Clerk[.]

The circuit court took Raspberry's objection under advisement, but later stated

> [o]ne of them is my signature. So one of them is my name. The other one is Judge West, and the other one is Judge Jones.
>
>     . . . .
>
> Well, this is simply not only a custom in the City of Hampton. I don't know where else it is practiced, but there is a Virginia Code section that allows this type of activity. Rather than the Judge signing each of these orders, it allows it to be . . . documented by the clerk in such a fashion in these orders.

The circuit court then admitted the three court orders as evidence of Raspberry's prior felony convictions but noted Raspberry's objection on the record.

The circuit court subsequently convicted Raspberry of all charges. The circuit court later sentenced Raspberry to five years for possession of a firearm while in possession of a controlled substance with the intent to distribute, five years with three years suspended for the possession of a firearm by a convicted felon, and twelve months, all suspended, for carrying a concealed weapon. The circuit court also convicted Raspberry of both possession with the intent to distribute cocaine and possession with the intent to distribute methamphetamine, but Raspberry does not challenge these convictions on appeal.

II. ANALYSIS

A. Raspberry's Status as a Convicted Felon

In his first assignment of error, Raspberry argues that the Commonwealth failed to prove "beyond a reasonable doubt that he was a convicted felon." More specifically, Raspberry contends that the three court orders from the Circuit Court for the City of Hampton were inadmissible because they were not "physically" signed by a judge. Therefore, Raspberry argues that the circuit court could not rely upon the three court orders to convict him of possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2, and possession of a firearm while in possession of a controlled substance with the intent to distribute, in violation of Code § 18.2-308.4.

"Decisions regarding the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." Blankenship v. Commonwealth, 69 Va. App. 692, 697 (2019) (quoting Michels v. Commonwealth, 47 Va. App. 461, 465 (2006)) (internal quotation marks omitted). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Id. (quoting Tynes v. Commonwealth, 49 Va. App. 17, 21 (2006)). To the extent that this case involves the trial court's application of a statute, however, we review that issue *de novo*. Bowden v. Commonwealth, 52 Va. App. 673, 676 (2008) (citing Ainslie v. Inman, 265 Va. 347, 352 (2003)).

In the Commonwealth, Code § 8.01-389 provides for the admissibility of judicial records. Pursuant to that statute, "[t]he records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are certified by the clerk of the court where preserved to be a true record." Code § 8.01-389(A). Prima facie proof that the clerk has certified such a record to be a true copy of the official record exists where: (1) "[t]he use of the term 'copy teste,' 'true copy,' or 'certified

- 5 -

copy' or a substantially similar term on a certification [is] affixed or annexed to a copy of an official record maintained by a clerk of court," (2) the copy "bears the signature of the clerk or any deputy clerk," and (3) the copy "has the name of the court where such record is preserved on the document or on the certification." Code § 8.01-389(B). Most importantly, "[t]he certification of any record pursuant to this section shall automatically authenticate such record for the purpose of its admission into evidence in any trial, hearing, or proceeding." Code § 8.01-389(F).

Here, the court orders meet the requirements of Code § 8.01-389 and were properly admitted at Raspberry's bench trial. The court orders bear prima facie proof that the Hampton Circuit Court Clerk certified the records to be true copies. Namely, the orders were all certified by the Hampton Circuit Court Clerk with an embossed seal that contained (1) use of the term "true copy," (2) the signature of a deputy clerk, and (3) the name of the court where the records were preserved, "Hampton Circuit Court." As such, the court orders were certified pursuant to Code § 8.01-389, making them automatically authenticated for the purpose of admitting the records into evidence at trial. Thus, the circuit court did not abuse its discretion in admitting the orders into evidence at Raspberry's bench trial.

Raspberry relies on Waller v. Commonwealth, 278 Va. 731 (2009), in support of his argument. In Waller, the Supreme Court held "[u]nder Code § 8.01-389(A), the records of all judicial proceedings *except orders of circuit courts* shall be received as prima facie evidence while circuit court orders shall be received *only when authenticated pursuant to Code § 17.1-123(A)*." Id. at 737 (emphasis in original). However, Code § 17.1-123(A) deals with the maintenance of the circuit court's order book and in any event, since Waller, the General Assembly has revised both Code § 8.01-389(A) and Code § 17.1-123(A).

- 6 -

In 2013, the General Assembly revised Code § 8.01-389(A), removing the requirements that records must be "authenticated" under Code § 17.1-123(A). Now, Code § 8.01-389(A) only requires that the records be certified as a true record by the clerk of court for the circuit court where the record is preserved. Code § 8.01-389(A).

Additionally, the General Assembly revised Code § 17.1-123(A) in 2014, also removing language that required authentication of an order. At the time of the Waller decision, Code § 17.1-123(A) provided, in part:

> All orders that make up each day's proceedings of every circuit court shall be recorded by the clerk in a book known as the order book. Orders that make up each day's proceedings that have been recorded in the order book shall be deemed authenticated when (i) the judge's signature is shown in the order, (ii) the judge's signature is shown in the order book, or (iii) an order is recorded in the order book on the last day of each term showing the signature of each judge presiding during the term.

Waller, 278 Va. at 735. Code § 17.1-123(A) now provides:

> Orders that make up each day's proceedings that have been recorded in the order book *shall be deemed the official record pursuant to § 8.01-389* when (i) the judge's signature is shown in the order, (ii) the judge's signature is shown in the order book, or (iii) an order is recorded in the order book on the last day of each term showing the signature of each judge presiding during the term.

(Emphasis added). However, Code § 17.1-123(A) and the presence or absence of a judge's signature on the order deals only with the authenticity of the order. Since Raspberry has only assigned error to the admissibility of these orders, the authenticity of the records is not properly before us.[2] Therefore, the orders were properly admitted under Code § 8.01-389(A) and Waller does not apply.

---

[2] To the extent that Raspberry's assignment of error can be read to also subsume an attack on the authenticity of the judges' signatures, any such analysis would be controlled by the application of Code § 59.1-480(8) defining an electronic signature as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a

B.  Sufficiency of the Evidence

In his second assignment of error, Raspberry "challenges the sufficiency of the evidence regarding his knowing possession of a firearm."  According to Raspberry, the evidence adduced at trial was insufficient to prove that he constructively possessed the two firearms discovered by Detective Figueroa.  Therefore, Raspberry seems to argue that the circuit court erroneously convicted him of all offenses related to the firearms—possession of a concealed weapon, possession of a firearm by a convicted felon, and possession of a firearm while in possession of a controlled substance with the intent to distribute—even though he fails to do so with specificity.

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Melick v. Commonwealth, 69 Va. App. 122, 144 (2018) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)).  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Burrous v. Commonwealth, 68 Va. App. 275, 279 (2017) (quoting Kelly, 41 Va. App. at 257-58).  In conducting our analysis, we are mindful that "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify."  Miller v. Commonwealth, 64 Va. App. 527, 536 (2015) (citing Commonwealth v. Taylor, 256 Va. 514, 518 (1998)).  Thus, we will affirm the judgment of the trial court unless that judgment is "plainly wrong or without evidence to support it."  Kelly, 41 Va. App. at 257 (citations omitted).

---

person with the intent to sign the record" and Code § 59.1-485(a), which provides that "[a] record or signature may not be denied legal effect or enforceability solely because it is in electronic form."

Here, the evidence was sufficient for the circuit court to find that Raspberry constructively possessed the two firearms discovered by Detective Figueroa. Code § 18.2-308.2 prohibits convicted felons, like Raspberry, from possessing firearms. Code § 18.2-308.4 prohibits the possession of a firearm while in possession of a controlled substance with the intent to distribute. Finally, Code § 18.2-308 prohibits carrying a concealed weapon. "Where the General Assembly uses the word 'possess,' Virginia courts have typically held that proof of actual or constructive possession are both permissible." Hunter v. Commonwealth, 56 Va. App. 50, 58 (2010) (citations omitted).

Our Supreme Court has explained that to establish constructive possession of a firearm by a defendant, "the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." Smallwood v. Commonwealth, 278 Va. 625, 630 (2009) (quoting Bolden v. Commonwealth, 275 Va. 144, 148 (2008)). Thus, the issue of whether Raspberry constructively possessed the two firearms is "largely a factual one." Id. at 631 (quoting Ritter v. Commonwealth, 210 Va. 732, 743 (1970)).

With these principles applied to the present case, it is clear that sufficient evidence existed to support Raspberry's convictions. The evidence reflects that the two guns discovered by Detective Figueroa were in a bag on the front passenger seat of the vehicle that Raspberry was driving and within Raspberry's dominion and control. Although "the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm, it is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." Id. at 630-31 (quoting Bolden, 275 Va. at 148).

Additionally, while Raspberry did not own the vehicle, Raspberry's girlfriend, Henderson, testified that she owned the vehicle and that Raspberry frequently drove it. Henderson also testified that the bag discovered by Detective Figueroa did not belong to her and that she did not know who it belonged to. Detective Figueroa also testified that, in addition to the firearms, the bottom of the bag contained two Gatorade bottles with condensation on the outside of the bottles. The circuit court, acting as the fact finder, could infer from this testimony that the Gatorade bottles had been recently placed at the bottom of the bag. Finally, Detective Figueroa testified to a nexus between firearms and narcotics distribution. See Thomas v. Commonwealth, 44 Va. App. 741, 755 ("While not alone dispositive, evidence linking a defendant to drug distribution may be considered as one factor in determining whether he may have had a motive to possess a firearm."), adopted upon reh'g en banc, 45 Va. App. 811 (2005). Given this evidence, this Court cannot say that the circuit court erred in convicting Raspberry of the offenses related to his constructive possession of multiple firearms.

For the reasons stated, we hold that the circuit court did not err in admitting the court orders as proof of Raspberry's prior felony convictions and that sufficient evidence existed to support Raspberry's convictions. Accordingly, we affirm the circuit court's judgment.

Affirmed.