UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Ortiz and Lorish
Argued at Norfolk, Virginia


JUAN ANTONIO JACKSON

                                                MEMORANDUM OPINION* BY
v.        Record No. 1080-21-1              JUDGE DANIEL E. ORTIZ
                                                AUGUST 30, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

Daniel B. Winegard, Assistant Public Defender, for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General; Sharon M. Carr, Assistant Attorney General, on
brief), for appellee.


A jury found Juan Antonio Jackson guilty of possessing a firearm after having been

convicted of a felony.  The Circuit Court of the City of Newport News sentenced Jackson to two

years' incarceration.  On appeal, Jackson contends that the evidence was insufficient to sustain his

conviction.  We disagree and affirm the trial court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Walker v. Commonwealth*,

74 Va. App. 475, 481 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)), *appeal

filed*, No. 220378 (Va. June 24, 2022).

On November 21, 2018, Master Police Officer Frank Vito and Detective Joseph Woods

were in an unmarked police van when they tried to stop a "tan or beige-color" vehicle on Marshall

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Avenue in the City of Newport News. The vehicle fled from the traffic stop into the Brookridge apartment complex. The officers did not chase the vehicle but later found it parked at the apartment complex, unoccupied, with its headlights on and the passenger door open. The vehicle was parked "in the driveway to [a] dumpster" that was surrounded by a fence on three sides. Detective Woods inspected the dumpster area between 5:12 p.m. and 5:14 p.m. to "make sure there was nothing discarded over there," and found nothing. At that time, "[i]t was getting dark" outside.

After locking the vehicle, the officers drove around the apartment complex until Detective Woods noticed Jackson walking toward the vehicle at 5:17 p.m. Jackson was about thirty or forty feet away from the unmarked police van. Officer Vito, who was wearing "plain clothes" and an outer equipment carrier displaying the word "police" and his badge, exited the van to speak with Jackson. As Officer Vito exited the van, Jackson "took off on foot." Officer Vito pursued Jackson and observed him run within ten or fifteen feet of the dumpster Detective Woods had previously inspected. Officer Vito did not see Jackson do anything by the dumpster area and then lost sight of Jackson, who was "much faster" than he was.

Detective Woods pursued Jackson from a different direction, caught up to Jackson, and followed him into an open field. Detective Woods saw Jackson "make a throwing motion with his right hand" and "something bright in color le[ave] his hand."[1] Soon after, Detective Woods told Jackson to "get on the ground," and Jackson did so. After detaining Jackson, Detective Woods observed that Jackson had "some clothes and a phone charger" underneath him. Detective Woods then searched the area where he saw the thrown object land and found a bag of ammunition several feet away from Jackson. The bag contained eleven .357 magnum cartridges.

---

[1] Detective Woods initially claimed that he saw Jackson throw "something white," but later testified that he "really meant that it was just bright in color, lighter."

Officer Vito instructed Detective B. Beggs, who arrived on scene to assist, to search for any evidence that may have been discarded during the foot pursuit. Detective Beggs searched the dumpster area at about 5:22 p.m. and immediately found a .357 caliber revolver lying on the ground near the dumpster's fence line. The revolver's muzzle was "plugged up with dirt" and pointed toward the fence. Detective Beggs observed "a drag mark indentation in the dirt . . . from the inside of the fence line towards the revolver." Detective Beggs further noticed that there was "dirt kind of sprinkled on the top of the barrel" and a "sliding mark under the fence." The revolver was loaded with Winchester .357 magnum cartridges, which matched some of the ammunition in the bag Detective Woods found. Detective Woods later successfully test-fired the revolver twice using the Federal .357 magnum cartridges also found in the bag.

Jackson was arrested and charged with possession of a firearm after having been convicted of a felony in violation of Code § 18.2-308.2.[2] At a jury trial, the Commonwealth presented testimony from the police officers and entered into evidence videos recorded by their body cameras. The videos show that the revolver was not on the ground in the dumpster area before the officers encountered Jackson. The videos also show that Jackson ran past the dumpster while pursued by Officer Vito. Finally, the videos show the location of the revolver in the dumpster area and Detective Woods' discovery of the bag of ammunition close to where he detained Jackson.

At the close of the Commonwealth's evidence, Jackson moved to strike the evidence, which the trial court denied. Jackson testified that he had been at the apartment complex for fifteen to eighteen minutes trying to find the apartment of people he had met on Facebook when he encountered the unmarked police van. Jackson admitted that he "took off running" as soon as the van door opened because somebody had recently been killed in the apartment complex, and he was "scared for [his] life." Jackson explained that he did not realize he was being pursued by police

---

[2] Jackson was convicted of receiving stolen property on July 18, 2014.

officers until he heard walkie-talkies. Jackson also testified that, once he heard the phrase "get on the ground," he "baseball slid[]" on the ground and let go of the items in his hands, including his white phone charger. Jackson denied any knowledge of the revolver or the bag of ammunition.

At the close of all the evidence, Jackson renewed his motion to strike, arguing that the evidence was insufficient to prove he possessed the revolver, which the trial court denied. The jury then found Jackson guilty of possessing a firearm after having been convicted of a felony under Code § 18.2-308.2, and Jackson was sentenced to two years' incarceration.[3] This appeal followed.

ANALYSIS

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). Further, we are bound by a trier of fact's decision about "[w]hether an alternative hypothesis of innocence is reasonable" as it is a question of fact. *Archer v. Commonwealth*, 26

---

[3] Jackson also was charged with and found guilty of possession of ammunition after having been convicted of a felony in violation of Code § 18.2-308.2. The trial court subsequently granted Jackson's motion to dismiss the ammunition charge under *Groffel v. Commonwealth*, 70 Va. App. 681 (2019), *aff'd*, 299 Va. 271 (2020).

Va. App. 1, 12 (1997). Thus, we will affirm the trial court's judgment unless it is "plainly wrong or without evidence to support it." *Raspberry*, 71 Va. App. at 29 (quoting *Kelly*, 41 Va. App. at 257).

Jackson argues that the circuit court erred by denying his motion to strike because the evidence was insufficient to prove that he knowingly or intentionally possessed the firearm. Rather, Jackson contends that the evidence "does not exclude the reasonable hypothesis of innocence that another individual placed the firearm near the dumpster." In support of his argument, Jackson points out that the firearm was not found on his person, that Officer Vito did not observe him do anything near the dumpster other than run by it, and the firearm's position "weigh[ed] against the possibility that the firearm was pushed under the outside of the fence to the inside of the fence."

"Possession of a firearm may be actual or constructive." *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018). Actual possession of a firearm may be established by "circumstantial evidence, direct evidence, or both." *Hunter v. Commonwealth*, 56 Va. App. 50, 59 (2010) (quoting *Byers v. Commonwealth*, 23 Va. App. 146, 150 (1996)). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Byers*, 23 Va. App. at 151 (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

In this case, the evidence was sufficient to allow a rational trier of fact to conclude that Jackson actually possessed the firearm. The evidence reflects that Jackson immediately fled from Officer Vito as Officer Vito exited his vehicle, evidencing Jackson's consciousness of guilt. *See Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018) ("Flight following the commission of a crime is evidence of guilt." (quoting *Clagett v. Commonwealth*, 252 Va. 79, 93 (1996))). Jackson then ran within ten or fifteen feet of the dumpster area while being pursued by Officer Vito. Jackson argues that Officer Vito did not observe Jackson do anything near the dumpster area. But the evidence indicated that it was dark outside and Jackson, who was "much faster" than Officer

- 5 -

Vito, was about thirty to forty feet ahead of him. Right before detaining Jackson, Detective Woods observed Jackson throw what was later determined to be a bag containing ammunition. That ammunition either matched the brand loaded in the revolver found near the dumpster or was able to be fired from it.

Around ten minutes before the police chased Jackson, Detective Woods had searched the dumpster area and found nothing, but after Jackson ran by the dumpster, the police discovered the firearm. Detective Beggs observed a "sliding mark under the fence" and "a drag mark indentation in the dirt . . . from the inside of the fence line towards the revolver," suggesting that the firearm was thrown underneath the fence. Considering the totality of the evidence, the trial court did not err in denying Jackson's motion to strike. Instead, the evidence was sufficient to allow the jury to dismiss Jackson's hypothesis of innocence and conclude that Jackson threw or otherwise discarded the firearm while being pursued by Officer Vito, and therefore, Jackson possessed the firearm.

CONCLUSION

The Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that Jackson was guilty of possession of a firearm by a convicted felon. For the foregoing reasons, Jackson's conviction is affirmed.

*Affirmed*.